## MOORE v. INVESTMENT PROPERTIES CORPORATION.*
### No. 7340.

Circuit Court of Appeals, Ninth Circuit.
June 12, 1934.

Craig & Weller and Reuben G. Hunt, all of Los Angeles, Cal., for appellant and cross-appellee.

Morrison, Hohfeld, Foerster, Shuman & Clark and Forrest A. Cobb, all of San Francisco, Cal., and Hiram E. Casey, of Los Angeles, Cal., for appellee and cross-appellant.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

PER CURIAM.

The appellant is the trustee in bankruptcy and the cross-appellant, Investment Properties Corporation, is a creditor whose claim was allowed by the District Court for the sum of $101,131.42 as a general unsecured claim under the Bankruptcy Act (11 USCA § 1 et seq.). In this opinion the trustee will be designated and referred to as appellant and the Investment Properties Corporation as claimant. The claim as filed consisted of two sep-

*Rehearing denied Aug. 29, 1934.

arate and distinct items, one for unpaid taxes in the sum of $1,352.02, and the other for damages in the sum of $224,686.67 for alleged breach of a lease of real property by the bankrupt as tenant of claimant. The lower court allowed for the item of taxes the full sum of $1,352.02, and there is no dispute between the parties as to the correctness of this award. As to the item of damages for breach of the lease, the referee found that the aggregate unpaid rental under the terms and provisions of the lease was $265,103.33; that the reasonable rental value of the premises for the balance of the term was $112,660.33; and to ascertain the then present cash value of this difference of $152,443 between said reasonable rental and the unpaid rental, the referee discounted each future monthly installment at 6 per cent. and arrived at the net sum of $105,568.20. The District Court affirmed the finding and order of the referee with the modification that it fixed the discount at 7 per cent., the legal rate of interest in California, instead of 6 per cent., the figure thus arrived at being $99,779.40, which was allowed by the court as damages.

The subject-matter of these two appeals is the correctness of the order of the lower court in allowing this second item of the claim for the sum of $99,779.40, and we shall hereafter refer to the claim as though it comprised only this item.

Appellant contends that this claim is not a provable one and that it should have been disallowed in its entirety; on the other hand the claimant contends that the item should have been allowed for the full sum of $152,-443, and that the allowance of the claim in that amount is required as a matter of law upon the findings of fact made by the court.

Prior to the bankruptcy, the bankrupt was engaged in the retail clothing business and operated a number of stores in and about the city of Los Angeles. On April 15, 1930, the bankrupt and the claimant entered into a contract of lease, under the provisions of which it constructed a building on the leased premises for the bankrupt's special purpose. The term of the lease was fifteen years, to begin at the time of the completion of the building. The rent specified was upon a graduated scale. The monthly rental from January 1, 1932, to July 1, 1932, was fixed at $1,225 per month.

The following provisions of the lease are pertinent to this inquiry:

"The payment of said taxes and/or assessments which the Lessee is obligated to pay shall be made by the Lessee at least ten (10) days before the same become delinquent and the Lessee shall exhibit to the Lessor vouchers for such payments, as and when the same have been paid.

"In the event the lessee shall default in the payment of any such taxes and/or assessments ten days before the same, or any part thereof, shall become delinquent or shall default in the payment of any such charges for water, gas or electricity, or other public utility charges, as aforesaid, for thirty (30) days after the same shall have become due and payable, the Lessor may thereupon pay the same, and the amount so paid, with interest thereon at the rate of eight per cent (8%) per annum, shall be added to and shall become additional rent hereunder and shall be paid by the Lessee to the Lessor when the next installment of rent shall become due.

"8. Anything herein contained to the contrary notwithstanding, this lease shall not be assigned or transferred by the Lessee, voluntarily or involuntarily, or by any proceeding or process of law. In the event the Lessee shall be adjudicated a bankrupt, either by voluntary or involuntary proceedings, or shall become insolvent or a receiver of its business or property shall be appointed, and such receivership shall continue for more than thirty (30) days, this lease, at the option of the Lessor, may be terminated, and thereupon the Lessor shall have the right to immediately enter upon and take possession of said premises, in which event the Lessee shall pay to the Lessor the difference between the reasonable rental value of said premises for the balance of the term hereof at the time of such termination, and the aggregate rental and other charges to be paid to the Lessor by the Lessee hereunder during the balance of the term hereof.

"14. If any rent or other sums payable hereunder shall be due and unpaid at the time when the same should be paid according to the terms hereof, and such default shall continue for a period of fifteen (15) days; or if default shall be made in any covenant, condition or agreement on the part of the Lessee to be kept and performed and such default shall continue, for a period of fifteen (15) days after written notice thereof given by the Lessor to the Lessee, then the Lessor may, at its option, and it shall be lawful for it to re-enter into or upon said premises and remove all persons and property therefrom and terminate the rights of the Lessee hereunder; and in such an event the Lessee shall pay to the Lessor the difference between the reasonable rental value of said premises for the balance of the term hereof at the time of such

re-entry, and the rental and other sums to be paid to the Lessor by the Lessee hereunder during the balance of the term hereof; provided, however, that the days of grace herein provided shall not apply to the covenants of the Lessee herein to pay taxes and assessments, and the same shall be immediately payable according to the terms hereof by the Lessee without any days of grace whatsoever.

"If the Lessee shall be in default in the payment of any rent or other sums payable hereunder, or shall be in default in the performance of any of the covenants, conditions or agreements herein contained, and shall abandon or vacate the demised premises, the Lessor may, at its option:

"(a) Bring suit to collect the rent and other sums payable to the Lessor hereunder as each installment or the whole thereof shall become due; or

"(b) Immediately enter upon the demised premises for the purpose of re-letting the same for such rent and upon such terms and conditions as to it may seem fit, and if a sufficient sum shall not be realized therefrom, after paying the expenses of such re-letting and collection to satisfy the rent and other sums payable hereunder and unpaid, the Lessee shall satisfy and pay any such deficiency and the expense of such re-letting and collecting; or

"(c) Immediately re-enter the demised premises and terminate this lease, and in such an event the Lessee shall pay to the Lessor the difference between the reasonable rental value of said premises for the balance of the term hereof at the time of such re-entry and the rental and other sums to be paid to the Lessor by the Lessee hereunder during the balance of the term hereof."

In accordance with the terms and provisions of said lease claimant commenced the construction of the building referred to therein, which was completed on October 20, 1930, and the bankrupt entered into the possession thereof. As provided by the lease, the term thus began on October 20, 1930, and the expiration date would be October 19, 1945.

The said bankrupt held and occupied the building and premises continually after entry as the tenant of claimant under the provisions of the lease, until certain occurrences transpired which are the subject-matter of the controversy here.

On April 5, 1932, the bankrupt made a written assignment of its assets, except leases and leasehold interests in real estate, to one A. D. Johnson. On April 6, 1932, the assignee accepted and took possession of the property and assets of said bankrupt for the benefit of its creditors. No notice of any kind was at any time recorded in the office of the county recorder of the county of Los Angeles, state of California, and claimant had no notice or knowledge of said assignment until about April 18, 1932, after the consummation thereof. On that day a representative of the assignee stated to a representative of the claimant in the presence of the general manager of the bankrupt that it had made an assignment for the benefit of its creditors; that the taxes on the premises, due April 20, 1932, would not be paid; that no further rent on the premises would be paid; which statements were not denied by the manager of the bankrupt. Assignee also stated that he was not authorized by the bankrupt corporation to surrender or repudiate the lease.

On April 19, 1932, appellee paid the taxes which, if not paid, would have become delinquent on April 20, 1932. On April 18, 1932, the assignee dictated a letter which was sent on April 19th, containing the following:

"Confirming our conversation of even date, it is the desire of the undersigned, Assignee of Mullen & Bluett, to maintain the fixtures on your property located on Wilshire Blvd. with the understanding that in consideration of an agreement to move these fixtures upon a three days' notice in writing, we will be permitted to leave the fixtures in the premises with no rent until the three days' notice is served.

"Will you kindly acknowledge receipt of this letter?"
—to which letter the claimant on April 23d responded as follows:

"We have your letter of April 19th requesting permission to allow the fixtures in the Mullen & Bluett store at the southwest corner of Wilshire & Harvard Boulevards, Los Angeles, to remain in the building rent free subject to a three day notice to remove them.

"This is agreeable with us provided it is with the distinct understanding and agreement between us that so long as the fixtures remain in the premises it is at your sole risk and responsibility and you release us from any and all liability of every kind and nature by reason of any loss or damage to the said fixtures from any cause whatever.

"You understand, of course, that our representatives and agents, real estate brokers, prospective tenants, etc., will be entering the premises at frequent intervals, and in reliev-

ing us from all responsibility you are doing so with the knowledge that this condition will prevail, and agree that you will not hold us responsible for any action of any such persons so far as the fixtures are concerned.

"On this basis, and with the agreement that you will remove these fixtures on or before the expiration of three days from the time we serve written notice upon you to do so we will permit the fixtures to remain in the premises rent free."

On April 25, 1932, said assignee removed from the premises all property previously belonging to the said bankrupt, and which had been assigned, with the exception of certain fixtures.

About April 28, 1932, the assignee suggested to claimant that it file its claim against said bankrupt, but at the same time advised claimant that he would not recognize such claim as valid, but that if claimant desired to establish any claim so as to share or participate in any of the assets of said bankrupt, it would have to file an action at law for that purpose, or else have the lessee adjudicated a bankrupt under the provisions of the National Bankruptcy Act and file its claim in such bankruptcy proceeding. The claimant never filed its claim with the assignee.

On April 29, 1932, claimant delivered to said bankrupt and to the assignee a written notice setting forth that the lessee had become and was insolvent; that it had not paid the second installment of taxes as required by the lease, and that the lessor had paid them; that the assignee and lessee had advised and represented that they intended to default by not paying any rent or any other sum under the provisions of the lease; that the lessee had disabled itself from paying or performing the terms of the lease by conveying its property to others; that it had abandoned and vacated the premises; and that it had voluntarily assigned said lease and all its rights thereunder. The writing concluded by giving notice to all concerned that the lessor had elected to exercise its option under the lease to terminate the same on account of each of the defaults enumerated. After the service of said notice and on said April 29, 1932, a representative of the claimant re-entered the leased premises and took possession.

On May 2, 1932, a representative of the assignee called upon claimant and tendered the sum of $1,225 which claimant refused for the reason that it had canceled and terminated the lease by the written notice of April 29, 1932. Later on the same day claimant was advised by the Crocker First National Bank of San Francisco that the representative of the assignee was at said bank and desired to deposit the sum of $1,225 to the credit of the claimant, but the bank was advised that claimant had refused to accept said payment and the bank was instructed that said sum was not to be credited to claimant's account in said bank. Prior to midnight on May 2, 1932, claimant changed the locks on the leased premises, and did not give or offer to furnish any keys to said locks to the bankrupt or the assignee, no person being upon said premises and no property being situated therein at the time except the fixtures. On said May 2, 1932, May 1st being Sunday and a legal holiday, the assignee made a sufficient tender of the rent for the month of May, which was refused, but made no tender of the sum theretofore paid for taxes by claimant.

On May 5 and 24, 1932, claimant served two further notices, the last one of which concludes as follows: " * * * If said lease has not already been terminated by the undersigned, on account of said defaults, by one or the other of said notices dated respectively April 29, 1932 and May 5, 1932, then said lease is hereby terminated by this notice."

On May 24, 1932, the bankrupt, pursuant to a resolution of its board of directors duly adopted, admitted in writing its inability to pay its debts and its willingness to be adjudged a bankrupt on that ground. On May 31, 1932, an involuntary petition in bankruptcy was filed by other persons, and, on June 2, 1932, claimant filed an intervening involuntary petition in bankruptcy, in which it alleged as an additional act of bankruptcy on the part of said bankrupt that the said bankrupt was then insolvent and had, within four months last past, made a general assignment for the benefit of its creditors. On June 20, 1932, said bankrupt corporation filed a verified answer to the intervening involuntary petition, in which it admitted said allegations of insolvency and general assignment.

The claim filed against the estate of the bankrupt by the claimant alleged that the bankrupt became insolvent April 5, 1932, and alleged the assignment for the benefit of creditors on that date, the taking of the possession of the assignor's property by the assignee on April 5, 1932; that the second installment of state and county taxes, amounting to $1,339.49, would have become delinquent and various penalties for such delinquency imposed by the law of the state of California would have accrued; that neither the bankrupt nor the assignee paid said taxes; and that both bankrupt and assignee notified the claimant

that they would not pay the taxes nor pay the installment of rent due on May 1st or any rent therefor; and they thereupon removed from and abandoned the demised premises; that the claimant paid the taxes on April 19th and claims that amount together with interest at 8 per cent. Claimant further alleged in its claim that it had exercised and would exercise its option to terminate the lease on account of the insolvency of the bankrupt, its failure to pay taxes, and its failure to reimburse claimant for taxes and for repudiation and anticipatory breach of the lease and on account of the removal from the demised premises and the abandonment thereof and on account of said assignment for the benefit of creditors; that claimant had elected to exercise the option reserved to it by the terms and provisions of said lease in the event of adjudication of bankruptcy and has elected to regard the said adjudication as an anticipatory breach of the terms and provisions of the lease and to terminate the lease and to take possession of the premises and to recover from the bankrupt the difference between the rental value of said premises for the balance of the term stated in said lease at the time of said termination, and the aggregate of rental and other charges required to be paid to the claimant by said bankrupt under the lease during the balance of said term.

The trustee in bankruptcy objected to the claim upon twelve separate legal propositions and in addition denied the insolvency of the bankrupt on April 5th and denied that either the bankrupt or assignee notified the claimant that he would not pay taxes or rent as required by the lease, denied that the bankrupt or assignee abandoned the premises or removed therefrom, denied that the lease was canceled or terminated prior to the filing of the petition in bankruptcy and alleged eviction by the landlord. Other denials and allegations need not be stated at this time. The trustee withdrew his objection to the allowance of the claim to the extent of $1,352.02 as unpaid taxes. In addition to a stipulation of facts, evidence was presented to the referee over objection as to the rental value of the property and as to whether or not the tenant was insolvent on April 5, 1932, and as to the disposition of the property of the bankrupt by the assignee under the assignment for the benefit of creditors. An expert accountant testified that at the time of the general assignment the books of the bankrupt showed assets in excess of liabilities amounting to $211,589.19, but that the liquidation of the assignee produced a result whereby the liabilities exceeded the assets by $144,099.63 without taking into account the claim of the claimant hereunder.

J. W. Davie, the assistant secretary and treasurer of the claimant, testified that in the discussion between Mr. Stern, who represented the Los Angeles Board of Trade, which was acting through Mr. Johnson, the assignee for the benefit of creditors, and Mr. Cate who was general manager of the bankrupt, and Mr. Smith who was the secretary of the bankrupt, Mr. Stern stated that they were going to run a sale of the property there as long as they could successfully dispose of the goods, but he thought not more than ten days, and that they were going to have everything out of there and the sale completed before the end of the month of April; that it was then stated by Mr. Stern that the creditors would probably receive 35 cents on the dollar; and that they would not pay any further rent. Mr. Cate stated that he would let Mr. Stern do the talking because the matter was entirely out of his hands. The witness testified that two days later he notified Mr. Johnson, the assignee, "that we would like to allow the fixtures to remain in there on a three-day notice to vacate," as set forth in an exchange of letters. This witness testified that he served the notice of termination of lease dated April 29, 1932, on that date; that after service thereof he went out and took possession of the store, using the key that he had in his office, and that he went inside and took possession; that no one was there at the time; that the merchandise had been removed, but the carpets, lighting fixtures, and show cases remained. On May 2d he changed the locks and thereafter attempted to relet the premises.

R. G. Cate, general manager of the bankrupt, testified to the conversation between Mr. Davie, representing the claimant, and Mr. Stern, representing the Los Angeles Board of Trade, that Mr. Stern wanted to know if it would be agreeable to Mr. Davie to leave the fixtures in the store at Wilshire and Harvard rent free for the time being "with the understanding that on a three-day notice he would be glad to get them out"; that this was agreed to; that he took no part in the conversation and had nothing to do with bringing Mr. Davie over; that he had no recollection of Mr. Stern's making any statement to the effect that he was not going to pay rent or taxes, but that Davie was told that the taxes had not been paid so that he would pay them and avoid the penalty.

The referee in bankruptcy found the fact

to be that on and after April 5, 1932, the bankrupt was insolvent, that on April 29th the bankrupt was in default under the provisions of said lease with respect to the payment of the taxes; that the claimant had not evicted the bankrupt and had not released the bankrupt from its obligations under the terms and provisions of the lease; that the bankrupt, on April 6th, delivered the keys to the premises to the assignee who entered the premises and conducted the business therein; that on April 29, 1932, the claimant re-entered the demised premises, but did not.disturb the possession of the bankrupt or of the assignee until May 2, 1932, when claimant changed the locks and retained the keys; at the time of the change there was no one on the premises and no property was located thereon other than the fixtures and carpets that,

"From the nature of the case, it now is, and always has been, impracticable and impossible to fix the actual damage to claimant arising out ,of said breaches of lease by said bankrupt and/or the necessarily resulting cancellation and termination of said lease on account thereof. It will be practicable and possible to fix such actual damages at the expiration of the specified term of said lease."

The opinion of the referee transmitted to the court in connection with petition to review discloses the ground of his conclusion approving the claimant's claim for the above-stated amount. The referee states, "If the bankrupt was not in default under the terms of the lease, the re-entry and changing of the locks by claimant effected a rescission of the lease on its part requiring the disallowance of its claim." He held there was no assignment of the lease by the tenant and consequently no violation of the provisions of the lease against assignment; that insolvency per se was not a ground for forfeiture of the lease; that under the terms of the lease the failure to pay the taxes when due was a breach of the lease; that the bankrupt corporation did not repudiate the lease or tender the possession of the premises to the claimant and did not in any manner divest itself of its leasehold interest; that at most the conversation between Mr. Cate and Mr. Stern amounted to no more than an expression of an intent to repudiate the lease at some time in the future, and that such a declaration alone was not a breach of the lease; that there was no abandonment of the property by the bankrupt or the assignee; and that neither .had vacated or. abandoned the premises on April 29, 1932, although they

had expressed an intention in the future so to do.

Exceptions to the referee's findings and conclusions were taken by both parties who petitioned the court to review the referee's order.

The petition of the claimant was based solely upon the contention that the referee erred in discounting the difference between the rental reserved in the lease and the rental value of the property to find the present value of such future rentals. The trustee in bankruptcy in his petition for review claimed that "the evidence showed that such lease was not breached by the bankrupt prior to April 29th or May 2, 1932, and that the re-entry by the lessor was an unlawful eviction which ended the lease"; that the provision for damages specified in the lease was in the "nature of a penalty and not liquidated damages and therefore unenforcible"; that the finding of the referee that the bankrupt was in default on April 29, 1932, was erroneous because of the fact that the installment of taxes which had not been paid by the tenant had been paid by the landlord and under the terms of the lease was not yet due from the tenant to him; that the finding that the bankrupt was not evicted by the landlord was erroneous.

The trial judge overruled the exceptions and approved the order of the referee in all respects except as to the rate of discount. As the referee correctly held upon the authority of Oliver v. Loydon, 163 Cal. 124, 124 P. 731, 732, the mere declaration of the tenant of a purpose not to pay the rent when due is not a breach of the lease. The Supreme Court of California in that case said:

"But, notwithstanding the general allegation that defendant 'renounced and repudiated the said lease,' the complaint affirmatively shows that there had been no actual repudiation of the lease; nothing more, in fact, than a mere threat on the part of defendant that he would not be further bound thereby, notwithstanding which he continued to occupy the premises, and did not actually default in the performance of any of the conditions of his contract. As said by the District Court of Appeal in deciding this case, it thus appears that 'there was no repudiation of the demised estate under the lease, but merely a repudiation of the obligation to pay the rent not yet due,' and also, we may add, a repudiation of the obligation to pay other charges not yet due.' In other words, whatever the defendant may have said, he had never surrendered or offered to surrender possession of the

demised premises, and was still in possession thereof under his lease, without having actually defaulted in the performance of any covenant or condition thereof, and was entitled to continue in such possession as long as he actually performed, as they accrued, the various obligations imposed upon him by the lease. As said by Justice James in his concurring opinion filed in this case in the District Court of Appeal, the facts shown by the complaint 'are inconsistent with the general allegation found in the complaint that * ·: * the defendant renounced and repudiated the said lease.' It follows from what we have said that no cause of action for damages was shown by the complaint."

It is clear that the tenant was in default for nonpayment of the taxes ten days before April 20th. If the claimant had within that ten days predicated its right to forfeit the lease on that nonpayment, it would have acted clearly within the provisions of the lease giving the landlord the right to terminate the lease because of such nonpayment. Instead, claimant paid the taxes when due and thus avoided the statutory penalty thereon and in lieu thereof, under the terms of the lease, was entitled to repayment by the tenant of the amount so paid by the claimant together with 8 per cent. interest until repaid. The conclusion of the referee and of the trial court was that the default for nonpayment of the tax was a continuing default and justified the re-entry of April 29th and of May 2d. This conclusion was erroneous. It was based upon the proviso in paragraph 14 of the lease, supra, that "days of grace herein provided shall not apply to the covenants of the lessee to pay taxes and assessments and the same shall be immediately payable according to the terms hereof by the lessee without any days of grace whatsoever." The phrase "days of grace" is not an apt one in dealing with a sum due under a lease. It is, however, apparent that the expression "days of grace" applies to the fifteen-day period mentioned in paragraph 14, supra, which provides that if any rent or other sums payable are not paid when due "and such default shall continue for a period of 15 days * * " then the lessor may at his option, and it shall be lawful for it to re-enter into or upon said premises. * * *" In view of the fact that the lease provides for the payment of taxes by the tenant ten days before they are in default, if the fifteen days of grace were allowed with reference to such payment, the statutory penalty for default might attach before the landlord could act to terminate the lease for such nonpayment. But where the lessor has paid the tax, the lease provides (paragraph 14, supra) "that the amount so paid, with interest thereon at the rate of eight per cent (8%) per annum, shall be added to and shall become additional rent hereunder and shall be paid by the lessee to the lessor when the next installment of rent shall become due." Did the payment of the tax by the lessor waive the default of the tenant for nonpayment of the tax when due? If so, it was not payable to the landlord until May 2d (May 1st being Sunday). In considering the conclusion of the court that the default for nonpayment of taxes was a continuing default, it should be borne in mind that upon default of the tenant the landlord had the option to terminate the lease by notice or by re-entry and in the absence of such action the lease remained in full force and effect. The default of the tenant did not ipso facto constitute a termination of the lease. There is no doubt that for a period of ten days from April 10th to April 20th the landlord had a right to terminate the lease. He did not do so, but elected to pay the taxes and thus to hold the tenant therefor under the terms of the lease which specified that such taxes were to be paid by the tenant "when the next installment of the rent shall become due" (par. 14, supra). We do not see upon what theory it can be said that between the 20th of April and the 1st of May the landlord could declare a default for failure to repay to him the amount of the tax he had paid when that repayment was not due until May 2d. If the matter were in doubt, and we entertain none, then that doubt must be resolved against a forfeiture of the lease, for, "a condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created." Civ. Code Cal. § 1442. It follows that on April 29th when the landlord entered the premises and assumed jurisdiction thereover, he had no right to do so unless that right was predicated upon the consent of the tenant. The referee holds that the tenant did not consent. When the claimant changed the locks and refused a tender of the amount of the rent for the month of May on the ground that the lease had been canceled and terminated by written notice of April 29, 1932, the tenant was not in default. While this tender of May 2d did not include the money paid by the landlord for taxes which, under the terms of the lease, was also due on May 2d, the refusal of the landlord to accept the tender was not predicated upon the deficiency in the amount, but solely upon the ground that it had theretofore terminated the

lease by the notice of April 29th. This constituted a waiver of all other objections to the tender and, consequently, to a deficiency in amount. Code Civ. Proc. Cal. § 2076; Civ. Code Cal. § 1501; Oakland Bank of Sav. v. Applegarth, 67 Cal. 86, 7 P. 139, 476; Latimer v. Capay Valley Land Co., 137 Cal. 286, 70 P. 82; Allen v. Chatfield, 172 Cal. 60, 156 P. 47; Hind v. Oriental Products Co., Inc., 195 Cal. 655, 235 P. 438. Moreover, the landlord had no right under the terms of the lease to terminate the same for nonpayment of rent or to re-enter until the period of fifteen days had elapsed after May 2d when the rent became due. Even in the absence of this fifteen-day period of "grace," mere nonpayment of the rent when due would not justify the claimant in taking possession of the premises even where the lease reserved an immediate right of re-entry. Universal Milk Co. v. Wood, 205 Cal. 751, 272 P. 745, 746. Demand for payment was an essential prerequisite to enforcing a forfeiture for nonpayment by re-entry or otherwise. Mossi v. Fairbanks, 19 Cal. App. 355, 125 P. 1071; Wickstrom v. McGrath, 86 Cal. App. 651, 261 P. 326, 327. There was no demand in the case at bar, on the contrary, a refusal of a tender. The entry of the landlord on April 29th, we think, may be safely disregarded. It is clear that the landlord was given access to the premises by the tenant. In pursuance of that right an agent of the claimant entered, with a witness, found no one present, and announced that he was taking possession and left. This was merely an impotent gesture. On May 2d, however, by changing the locks on the premises the tenant was excluded. The tenant was not then in default. This was clearly an eviction of the tenant (Agar v. Winslow, 123 Cal. 587, 56 P. 422, 69 Am. St. Rep. 84), unless acquiesced in by the tenant, in which event it would be a surrender. The referee held that the tenant did not surrender the premises, but it should be noted that the letter of April 19th, above quoted, addressed by the landlord to the assignee, stated that the assignee would be allowed to keep the fixtures on the premises without rent until three days after notice was given to remove the same. The conclusion that this assumption by the landlord of authority over the leased premises which was acquiesced in by the assignee for the benefit of the creditors and by the general manager of the tenant amounted to a surrender of the lease and an acceptance of that surrender without qualification by the landlord, seems inescapable notwithstanding that the assignee said at that time he had no authority to surrender the lease. Whether there was a surrender by mutual agreement or an eviction, the landlord could subsequently claim neither rent nor damages unless, at the time and in connection with the voluntary surrender, if any, the landlord indicated in some definite fashion its intent to hold the tenant for deficiencies in rent due to releasing the premises for the account of the tenant. Treff v. Gulko, 214 Cal. 591, 7 P.(2d) 697. There was no indication of such a purpose, in anything said or done by the landlord in connection with the entry on May 2d, or that of April 29th, or at the time of the exchange of letters on April 19th. The entry on May 2d was made surreptitiously and with intent to exclude the tenant and consequently it was unaccompanied by any reservation of any right under the lease.

There is another reason why the order must be reversed. The lease provides that in the event of a forfeiture and re-entry the tenant shall be liable in an amount equal to the difference between the rent reserved and the reasonable rental value of the premises. The validity and effect of this provision depends upon the law of the state of California. Similar provisions for liquidated damages in such cases have been held valid in other states where the amount of liquidated damages fixed by the lease is reasonably related to the actual damages. Wm. Filene's Sons Co. v. Weed, 245 U. S. 597, 38 S. Ct. 211, 62 L. Ed. 497; Gardiner, Trustee, v. Wm. S. Butler & Co., Inc., 245 U. S. 603, 38 S. Ct. 214, 62 L. Ed. 505; In re Outfitters' Operating Realty Co. (A. W. Perry, Inc., v. Irving Tr. Co.) (C. C. A.) 69 F.(2d) 90, and cases cited. That general rule, however, is not applicable in California. By sections 1670, 1671, Civil Code of California, provisions for liquidated damages, as well as for penalties, are void, except in the case where "it would be impracticable or extremely difficult to fix the actual damage." (1671, Id.) We quote 8 Cal. Jur. p. 852, § 100, in part, as follows:

"It has been said that these sections [§ 1670, 1671 C. C. C.] announce no new principle of law in California. They were intended to secure a just compensation for injuries, where they could be readily ascertained, and to protect parties in those cases from improvident contracts. They were not intended, nor is it the policy of the law, to force a construction of a contract that will assign it to the prohibited class and thereby defraud a party of the benefit of an agreement he has taken to secure him against loss. But

it is also true that these statutory enactments have narrowed the field of validity by not allowing the enforcement of the provision for payment of a fixed sum on a breach, except where from the nature of the case it would be impracticable or extremely difficult to fix actual damages, while before their adoption such a provision might also have been sustained where the amount fixed was reasonably proportionate to the actual damage suffered."

See, also, Anaheim v. Yeoman, 51 Cal. App. 759, 761, 197 P. 959. The measure of actual damages is fixed in California as the difference between the rent reserved in the lease and the rent received by the landlord after forfeiture, provided he proceeds in good faith and with diligence to relet the premises for and on account of the tenant. Two recent cases in California have stated the well-settled rule, Phillips-Hollman, Inc., v. Peerless Stages, Inc., 210 Cal. 253, 291 P. 178; Treff v. Gulko, 214 Cal. 591, 7 P.(2d) 697. It seems reasonably clear without resort to decisions of the California court other than those bearing upon the general proposition as to the validity of provisions for liquidated damages under the two Code sections quoted, that we have in the case at bar an attempt to substitute an agreement for liquidated damages for a certain and definite measure of damages fixed by the law providing for an amount readily ascertainable at the end of the term by subtracting the rent received from the rent reserved. Under the decisions of California the liability for these damages does not accrue until the term has ended. Any uncertainty in the amount is thoroughly resolved by the time that the damages accrue. Until that time they are uncertain. However, the Supreme Court of California has passed upon the definite question as to whether or not a provision for liquidated damages for breach of a lease is valid and enforceable. The first case where it is definitely held that the provision in a lease for payment of $2,000 damages in the event of default was invalid under the Code sections above cited is Jack v. Sinsheimer, 125 Cal. 563, 58 P. 130. It is true that this decision might have been placed upon the ground that this amount had no reasonable relation to the actual damages suffered and was a penalty, but the court did not place the decision upon that ground, but upon the ground that it was not "impracticable or extremely difficult to fix the damages," a ground equally applicable in California under the Code (sections 1670, 1671, Civ. Code Cal., supra), to liquidated damages. In Green v. Frahm, 176 Cal. 259, 168 P. 114, the Supreme Court of California again had occasion to pass upon a provision of a lease requiring the tenant to pay $3,000 upon breach of a lease by the tenant. Following the decision in Jack v. Sinsheimer, supra, it again held that the fixing of damages for a breach of the lease by the nonpayment of the rent was not "impracticable or extremely difficult," and, hence, held the agreement fixing a different amount was void. That court held to the same effect in Knight v. Marks, 183 Cal. 354, 191 P. 531. The same rule was applied by the California District Court of Appeal in Rez v. Summers, 34 Cal. App. 528, 168 P. 156. See, also, Bradmer v. Noesen, 123 Cal. App. 684, 12 P.(2d) 84, where a clause in a lease for liquidated damages was conceded to be void on the authority of Green v. Frahm, 176 Cal. 259, 168 P. 114, supra, and Rez v. Summers, 34 Cal. App. 527, 168 P. 156, supra (decided May 25, 1932, rehearing by the Supreme Court of California denied). See our discussion of the rule as to liquidated damages in California under sections 1670, 1671, Civ. Code Cal., in Pacific Dock & Terminal Co. v. Los Angeles Dock & Terminal Co. (C. C. A.) 50 F.(2d) 557, 559, also Hanna Nielsen S. S. Co. v. Hammond S. S. Co. (C. C. A.) 32 F.(2d) 31. It follows from these cases that the provision in the lease for liquidated damages is void under the law of California, and that the claim for damages under the California law is not provable in bankruptcy. See Manhattan Properties, Inc., v. Irving Trust Co., 291 U. S. 320, 54 S. Ct. 385, 78 L. Ed. 824; Quinn v. Jaloff, 71 F.(2d) 707, filed concurrently herewith; Wake Development Co. v. Auburn-Fuller Co. (Cord v. McFie), 71 F.(2d) 702, filed concurrently herewith.

Order modified by reducing the amount to $1,352.02.