**CHURCH OF SCIENTOLOGY OF
HAWAII, Plaintiff-Appellee,**

v.

**The UNITED STATES of America,
Defendant-Appellant.**

**No. 71-2761.**

United States Court of Appeals,
Ninth Circuit.

Sept. 6, 1973.

314

Meyer T. Rothwacks (argued), Scott P. Crampton, Asst. Atty. Gen., Fred B. Ugast, Acting Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Robert K. Fukuda, U. S. Atty., Honolulu, Hawaii, Harold S. Larsen, Grant W. Wiprud, Donald H. Olson, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

Tobias C. Tolzmann (argued), Joe Thrasher, Honolulu, Hawaii, for plaintiff-appellee.

Before KOELSCH, WRIGHT and TRASK, Circuit Judges.

TRASK, Circuit Judge:

The district court denied the government's motion to dismiss in this tax refund case. Being of the opinion that the denial involved a controlling question of law and that an immediate appeal might materially advance the ultimate disposition of the case, the trial court so stated and we allowed the interlocutory appeal under 28 U.S.C. § 1292(b).[1]

The Church of Scientology of Hawaii (Church) was granted a charter as a nonprofit religious corporation on December 8, 1964. It filed information income tax returns for the years 1965 and 1966 claiming exemption under section 501(c)(3) of the Internal Revenue Code as a church formed exclusively for religious and educational purposes, no part of the net earnings of which inured to the benefit of any private shareholder or individual. The Internal Revenue Service denied the claim of exemption and assessed tax deficiencies for the two years. The Church paid the deficiencies, filed claims for refunds which were disallowed and then filed suit for a refund of the sums paid. The issue in all of the proceedings was the claimed exempt status under section 501(c)(3). Following discovery proceedings and a motion for summary judgment filed by the Church, the government proposed a settlement whereby a refund would be made of the amount "plaintiff would have received (other than costs) had it prevailed in this litigation." The action would then be dismissed with prejudice. This offer was rejected but the Church suggested that an offer of judgment pursuant to Rule 68 Fed.R.Civ.P. would receive favorable consideration. No such offer was made but the government caused checks aggregating $806.08 to be tendered. The tender was not accepted and the motion to dismiss was filed asserting that the action had become moot and that a justiciable controversy no longer existed by virtue of the continuing tender. The motion to dismiss was denied and this interlocutory appeal allowed.

At the outset we recognize that there must be a viable justiciable controversy before the court in order for it to act, since the court does not render advisory opinions or decide abstract propositions. California v. San Pablo & Tulare R.R. Co., 149 U.S. 308, 314, 13 S.Ct. 876, 37 L.Ed. 747 (1893).[2] It is also entirely clear that jurisdiction to decide questions concerning federal taxes has been expressly withheld under the Declaratory Judgments Act, 28 U.S.C. § 2201. Apart from these settled rules there is left for consideration whether under the general rules of mootness there remains anything for the court to decide after an unconditional and continuing offer by the government to refund the amount the taxpayer has paid, plus interest. Appellee calls our attention to several matters about the offer that it urges as significant. (1) The offer does not include any costs in the ac-

---

1. The question certified was as follows:
   "Should the defendant's motion to dismiss, on the ground that this civil Tax refund action be rendered moot by reason of an absolute and unconditional tender to plaintiff of the amounts sued for plus interest as provided by law, be granted." Appellant's Brief at 3.

2. "[I]t is well settled that federal courts may act only in the context of a justiciable case or controversy." Benton v. Maryland, 395 U.S. 784, 788, 89 S.Ct. 2056, 2059, 23 L.Ed.2d 707 (1969); Liner v. Jafco, Inc., 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964).

tion; (2) there is a dispute as to the computation of interest; (3) the offer states that "the terms of settlement should *not* be included in the stipulation" (emphasis in original); and (4) there remain a number of unresolved questions and continuing consequences whose determination will be foreclosed by a dismissal. All of these work together, it is argued, to preserve jurisdiction against an unaccepted tender of the refund.

Appellant relies heavily upon our decision in Mitchell v. Riddell, 402 F.2d 842 (9th Cir.1968), cert. denied, 394 U.S. 456, 89 S.Ct. 1223, 22 L.Ed.2d 415 (1969), as being dispositive of this case. In *Mitchell* the settlor of an inter vivos trust established exclusively for charitable purposes had attempted unsuccessfully to have the Internal Revenue Service (IRS) declare it a tax exempt organization. The service had declined to do so and persisted in its demand that the trust report its income as a taxable organization, although apparently no assessment had been made by IRS nor other legal action taken. In order to obtain a determination Mitchell, the settlor, filed a trust return, remitted the sum of ten dollars to IRS in behalf of the trust and " 'included the statement that no tax was due, . . . and calling for a refund with reasons stated.' " 402 F.2d at 844. He thereupon filed suit in the district court to recover the ten dollars. In a second cause of action he asked that the trust operations be found to be tax exempt under the Code. The government later repaid the ten dollars to settlor and settlor accepted the money. The trial court dismissed and we affirmed. We held that the repayment mooted the first cause of action and the proscription in 28 U.S.C. § 2201 of the *Declaratory Judgments Act* stripped the court of jurisdiction to pass upon the second.

Some readily apparent distinctions make Mitchell v. Riddell, *supra*, a questionable precedent. The payment of the refund was not only tendered, but accepted. Again, the entire litigation was contrived by settlor. No assessment for unpaid federal income taxes against the trust or its alter ego had been made. Significantly, we said:

"Appellants are not without a remedy. The Congress has provided ample machinery for the settlement of income tax controversies. In the event a tax is assessed against the Foundation, judicial review of such assessment may be sought under the provisions of 26 U.S.C. § 7422 by paying the tax and seeking a refund in the district court, or by petitioning the Tax Court of the United States, prior to paying the tax, and in the event of an adverse decision by the Tax Court by petitioning this Court to review the decision of the Tax Court." 402 F.2d at 847.

Here there had been an assessment for claimed tax deficiencies, payment with claim for refund and detailed statement of reasons and after denial of claim, a suit to recover payments. This is the "ample machinery for the settlement of income tax controversies" to which we pointed in *Mitchell, supra.*

The government also cites four cases as authority for the proposition that in no other case has a taxpayer been able "to withstand a motion to dismiss following a tender of the amount in dispute." We consider them. In Drs. Hill & Thomas Co. v. United States, 392 F.2d 204 (6th Cir.1968), the taxpayer, a professional corporation, challenged a Treasury Regulation which would eliminate taxation of income to the corporation and cause it to flow through to the individuals on a partnership basis. The Commission tendered a refund of the entire amount in dispute and the case was dismissed, the court pointing out that the identical problem was being litigated in two other circuits where no mootness defense was available. The taxpayer was thus assured of a judicial determination. In Lamb v. Commissioner of Internal Revenue, 390 F.2d 157 (2nd Cir. 1968), the taxpayer sought a determination of the deductibility of his law school expenses. During the pendency of

the litigation a similar problem was ruled against the Commissioner, prompting him to tender the refund sought by this suit. The court dismissed the action as moot pointing out the foregoing and that further proceedings against the taxpayer for the next year were barred. Thus, there appears to have been a final determination. A. A. Allen Revivals, Inc. v. Campbell, 353 F.2d 89 (5th Cir. 1965), was a case where taxpayer sought exemption as a religious and educational organization. Its suit was to recover funds paid as Federal Insurance Contributions Act taxes. It tendered the money to the taxpayer but during the litigation the Tax Court held that the taxpayer was in fact organized and operated exclusively for charitable and educational purposes and no income taxes were due. IRS also ruled that the taxpayer was exempt from employment taxes. Thus, again there had been a judicial determination of status. Regina v. United States, 208 F.Supp. 137 (W.D. Pa.1962), involved an income tax based upon a valuation of corporate stock used in an exchange. A tender of the refund sought was made and the litigation held moot and dismissed. Although the merits were not judically determined it was a non-recurring transaction and tax with no indicated collateral involvements upon which other difficulties to the taxpayer could hinge.

■ In none of them, therefore, was there an even arguable reason to continue with litigation after the tender or payment was made. Thus we do not find any of the cases cited by the government as dispositive of the issues here. Looking first at the direct controversy between the parties, we note that there is nothing in the proposed refund payment to the taxpayer of sums involuntarily paid for 1965–1966 which would have assured it that the same demands would not be made for 1967 and 1968. Indeed, the contrary is strongly

suggested.[3] It has long been the rule that "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case." United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968). Prior to the *Phosphate Export* case, the Court had warned against the danger of dismissal for mootness when actions of governmental agencies are likely to be repeated, pointing out that broader considerations should not be defeated by short-term orders "capable of repetition, yet evading review. . . ." *See also* Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911).

■ The proscription of the Declaratory Judgments Act as to tax matters, 28 U.S.C. § 2201, has no application here. Appellee had sought relief under the statute which provided a cause of action for refunds of taxes unlawfully assessed and paid. 26 U.S.C. § 7422. It did not pretend to ask for declaratory relief. The assessment had been made by the IRS, the taxes paid and claims for refunds made and disallowed and the suit for refund then properly filed. The underlying issue at all stages was taxpayer's claim of exemption under section 501(c) (3).

■ Turning, then, to the appellee's arguments in opposition to mootness, we conclude that the contention that the amount of the tender is insufficient and therefore the action may not be mooted by that tender is not well taken. Insufficient interest was claimed of $1.30; costs were not included in the tender. But no objection to the tender was made for these reasons. The rejection was based upon a letter to Mr. Wilkenfield of the Department of Justice dated May 11, 1971. It relied upon charges of collateral harassment which a

---

3. Attached to appellee's brief was a reproduction of a letter from the IRS dated September 24, 1971, sending back to appellee information returns it had filed based upon its claimed ex- empt status and notifying it that it was not eligible to file such a return, but must file federal income tax returns.

cash refund would not lay to rest and a counter offer of settlement of all questions. A refusal to accept a tender for one reason waives all others. Moore v. Investment Properties Corp., 71 F.2d 711, 717–718 (9th Cir.), cert. denied, 293 U.S. 611, 55 S.Ct. 142, 79 L.Ed. 701 (1934). The same reason defeats appellee's argument based upon failure of the government to tender costs.

The principal reasons advanced by appellee in support of the trial court's retention of jurisdiction are that the un-. derlying issue of the status of appellee as an exempt corporation is a continuing one. It recurs each year. In addition, the failure to resolve the legal issue results in adverse collateral consequences which would be resolved by a determination of the underlying issue.

The ongoing nature of the controversy is evidenced not only by a rejection of information returns for a later year which were filed on the basis that appellee is tax exempt and a demand by IRS for regular tax returns,[4] but is evidenced even more clearly by an IRS "Manual Supplement," a copy of which dated September 21, 1970, appears in the record. The stated purpose of the manual is to identify "Church of Scientology type religious organizations" and to provide guidelines for examining returns and for processing applications for exemption. The detailed instructions which purport to describe in part the religious philosophy of the Church appear to make such organizations a suspect group. It is couched in terms of directions for future guidance.

That the tender by IRS in this case of a refund of 1965 and 1966 income tax payments was not intended to be a final resolution of the tax exempt status issue is also evidenced by the fact that on

March 24, 1971, officials of the Church were subpoenaed to appear at the IRS office and bring with them:

(1) Payroll records from January 1, 1967, through December 31, 1970, inclusive.

(2) W-2's for 1967 through 1970 inclusive.

The ongoing nature of the problem was also disclosed by a levy by IRS on the bank account of the Church in the First Hawaii Bank for unpaid "941 tax" on or about March 2, 1971.[5]

Collateral consequences are also involved. An organization exempt from income taxation pursuant § 501(c)(3) is additionally exempt from contributing under the Federal Insurance Contributions Act, 26 U.S.C. § 3121(b)(8)(B), under certain circumstances. There are also advantages to a church found to be exempt under other provisions of the 1954 Internal Revenue Code.[6]

Other collateral consequences of its indeterminate status include the right to certain postal rates and the right to solicit financial support on the basis that gifts will be tax deductible as religious or charitable contributions.

In United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953), the resignation of a common director did not render moot an attack upon an interlocking directorate.

"[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot. . . . The case may nevertheless be moot if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.' The burden is a heavy one." 345 U.S. at 632–633, 73

---

4. See footnote 3 supra.

5. The number "941" apparently refers to Form 941 which is the form on which F.I.C.A. and income withholding taxes are reported. Treas. Reg. § 39.1–4(2) (F.I.C.A.); § 31.6011(a)–4 (income tax).

6. See 26 U.S.C. § 3401(a)(9); Treas.Reg. § 31.3401(a)(9)–1(b)(2).

An exemption is provided for certain withholding tax payments by religious organizations with such organizations being defined as having "the same meaning and application as is given to the term for income tax purposes."

S.Ct. at 897, quoting United States v. Aluminum Co. of America, 148 F.2d 416, 448 (2nd Cir. 1945).

*See also* United States v. Concentrated Phosphate Export Ass'n, *supra.*

■ In criminal cases it appears clear that the payment of the penalty will not moot the case for final appeal and determination if the judgment of conviction may entail collateral consequences. Sibron v. New York, 392 U.S. 40, 53–55, 88 S.Ct. 1912, 20 L.Ed.2d 917 (1968); Ginsberg v. New York, 390 U.S. 629, 633 n. 2, 88 S.Ct. 1274, 20 L.Ed. 2d 195 (1968). The rule has developed to the point where the Court stated in *Sibron, supra,* that "a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." 392 U.S. at 57, 88 S.Ct. at 1900.

Granted that a criminal case is different from a civil case in many respects, it is difficult to find a reason for distinction when considering whether a case or controversy exists under Article III of the Constitution. Certainly we find no distinction under the circumstances of this case.

Our conclusion in this respect if fortified by the judgment of the United States District Court for the Western District of Missouri in First Federal Savings & Loan Ass'n v. United States, 288 F.Supp. 477 (W.D.Mo.1968). In a fact situation quite similar to the case here, that court held that a tender (as distinguished from payment) was not effectual to moot the case and that the possibility of a continuing recurrence of the problem was sufficient to entitle the taxpayer to have the underlying legal issue determined.

■ We must conclude with the admonition that what we say and hold here on the issue of mootness is not intended to indicate any view upon the merits. Whether the Church is eligible and can qualify for an exemption from payment of income taxes under section 501(c)(3) of the Internal Revenue Code for its taxable years 1965 and 1966 must be determined upon the evidence presented at the trial upon that issue. We only answer the question certified by the interlocutory appeal which is that the defendant's motion to dismiss on the ground stated should be denied.

KOELSCH, Circuit Judge (dissenting.)

If a judgment on the merits would be worth the judicial time, the outlay of money, and the attorney's efforts, I would hasten to join in the court's opinion. No good purpose would be served, now that the judicial process has been initiated, to dismiss this suit only to have a similar one commenced and prosecuted at some future time. However, I am convinced that the trial, which the Commissioner seeks to avoid, will settle nothing more than the church's income tax status for the particular years under consideration—1965 and 1966. Why, then, should we permit litigation which bids fair to be involved and time consuming to continue?

The collateral estoppel effect of a judgment in an income tax matter is generally limited, because each year's taxes are based upon facts peculiar to that particular year, and give rise to separate claims by the Collector. Although the doctrine does operate in the field of tax law, the factual peculiarities of the subject have limited its application.

Thus in Tait v. Western Md. Ry. Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405 (1933) the Court, concluding that the concept of res judicata was applicable in the field of tax law despite the scheme of annual tax periods, held that a prior adverse determination regarding the deductibility of an amortized proportion of the discount on sales of bonds by the taxpayer's predecessors estopped the Collector from relitigating that issue in a suit involving a later period. However, it should be noted that the allowable discount constituted a "static fact"—one which did not derive its legal impact from events of the later period.

On the other hand, Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948) established two areas in which collateral estoppel does not operate: The first, where the legal climate changes in the interim between the suits; there, although the material fact is "static," the prior determination is not controlling. The second, where different—in the sense of new—facts have arisen, such as a series of contracts or directors' resolutions, although such facts may be similar or identical to facts that were peculiar to a prior year, the prior determination on the "old" facts does not control the decision regarding the legal impact of the "new."

This "separable facts" doctrine in tax cases has been criticized as being too mechanical in its operation and exalting form over substance [United States v. Russell Mfg. Co., 349 F.2d 13 (2d Cir. 1965)] and has been confused by lower courts; but it is still good law. See Branscomb, Collateral Estoppel in Tax Cases: Static and Separable Facts, 37 Texas L.Rev. 584, 588–97 (1959). The doctrine has been defended as an application of the general rule that an issue must in fact be litigated before it can have an estoppel effect on a subsequent litigation [Heckman, Collateral Estoppel as the Answer to Multiple Litigation Problems in Federal Tax Law: Another View of Sunnen and The Evergreens, 19 Case W.Res.L.Rev. 230, 240 (1968)] and on the basis that the relitigation of genuinely identical sets of facts with the same legal implications which the doctrine necessitates in tax cases may well require less judicial time than the appeals and remands involved in an erroneous determination by a trial court that collateral estoppel applies. *Branscomb, supra,* 37 Tex.L.Rev. at p. 591; 85 Harv.L.Rev. 1478 (1972).

The record in the instant case makes clear that a trial would simply establish the "separable facts" of *Sunnen,* not the "static facts" of *Tait.*

Under § 501(c)(3) church is eligible for exemption if it is a corporation "organized and operated exclusively for religious—purposes—[and] no part of the net earning of which inures to the benefit of any private shareholder or individual—" The Tax Regulations relating to this section of the statute [Treas. Reg. § 1.501(c)(3)–1 (1959)] set up two essential requirements for an exemption; one organizational and the other operational. Both must be met. A determination of the first requires an analysis of the corporation's charter to determine whether it was organized exclusively for religious purposes; of the second, a consideration of the actual day to day operation of the corporation. Here the Commissioner has forthrightly admitted that the church meets the organizational requirement of § 501(c)(3) and, accordingly, has made clear that his objection to church's claim of exemption is predicated solely upon operational grounds.

There are, of course, a variety of bases upon which the Commissioner can challenge a claim of exempt status, all of which involve a consideration and determination of the financial operation of the church during a given tax year. For instance, as in Founding Church of Scientology v. United States, 412 F.2d 1197, 188 Ct.Cl. 490 (1969), he may take the position that exemption should be denied because church income inured to the private benefit of its founder. Or he may assert that exemption is lost because church paid unreasonable salaries. However, under the "separable facts" doctrine, a determination that church has or has not violated the "inurement of benefits" clause during 1965 and 1966 would have no estoppel effect in litigation concerning the same issues with respect to subsequent years.[1] This result follows both under *Sunnen* and under

---

1. A fortiori with respect to salaries; the dollar amounts may be precisely the same but the reasonableness will vary with changes in living standards and community mores from year to year.

the general principle of collateral estoppel that an issue must be actually litigated in order to have an impact in subsequent litigation of a different claim. Developments in the Law—Res Judicata, 65 Harv.L.Rev. 818, 840 (1952).

The judgment should be reversed.