**MISION INDUSTRIAL, INC., et al., Plaintiffs,**

v.

**Rafael HERNANDEZ–COLON et al., Defendants.**

Civ. No. 74–587.

United States District Court,
D. Puerto Rico.

Nov. 21, 1975.

Emilio A. Soler, Mari, Río Piedras, P. R., Sarah Chasis, and David Schoenbrod, Natural Resources Defense Council, Inc., New York City, Olaguibeet A. López-Pacheco, Hato Rey, P. R., Germán A. González, Hato Rey, P. R., Secretary of Justice, Dept. of Justice, Commonwealth of P. R., San Juan, P. R., for plaintiffs.

Carlos E. Soltero-Rigau, Santurce, P. R., for Government Development Bank of P. R.

Luis A. Lugo, Jr., San Juan, P. R., for P. R. Water Resources Authority.

José M. Pizarro-Zayas, San Juan, P. R., for P. R. Ports Authority.

José Anglada, Asst. U. S. Atty., San Juan, P. R., for U.S.A.

John E. Varnum, Atty., Dept. of Justice, Washington, D. C., Jorge Luis Ortiz-Viera, San Juan, P. R., for P. R. Highway Authority.

## OPINION AND ORDER

TORRUELLA, District Judge.

This is a suit filed by several ecologically minded organizations and residents of Puerto Rico against several officers of the Commonwealth of Puerto Rico, the Environmental Protection Agency (E.P.A.), and the Administrator of said Agency.

In essence, the action is directed to stopping the construction of a superport/oil refinery complex in Puerto Rico which is allegedly projected by the Commonwealth Government in violation of the Clean Air Act, 42 U.S.C. § 1857 et seq. The suit seeks injunctive and declaratory relief against Defendants and the issuance of a writ of mandamus against the Administrator of E.P.A.

Plaintiffs claim that by committing themselves to the construction of the mentioned project, the Commonwealth Defendants have violated the Clean Air Act, supra, and the Puerto Rico Environmental Act, 12 LPRA 1121 et seq., by their failure to issue an environmental impact statement prior to their alleged commitment.[1] Plaintiffs further allege that Defendants EPA and its Administrator have also violated the Federal Statute by failing to issue a "notice of violation" against the Commonwealth Defendants[2] and by failing to order a revision of the Puerto Rico Implementation Plan in accordance with said statute.

Defendants have raised various defenses in motions, including sovereign immunity and failure to state a case and controversy pursuant to Article III of the Constitution. Because of recent developments in this case, we need only discuss the questions related to whether this matter presently raises a justiciable controversy which can be properly entertained by this Court.

On October 24, 1975 Mr. Amadeo I. D. Francis, Acting Administrator of the Economic Development Administration, filed a sworn statement supplementing the one filed by Mr. Teodoro Moscoso the Administrator. Therein Mr. Francis states that:

"Uncertainties in the worldwide petroleum situation and the lack of a long term energy policy in the United States has tended to create a climate not conducive to private investment in any such project in Puerto Rico. As a result, the Commonwealth of Puerto Rico, through its Economic Development Administration, is taking no further action and studies which may induce it or any other government or private entities or persons to proceed with the gathering of the data required to obtain clearances required by law in order to construct a superport in

---

1. For the relationship between Federal and Commonwealth law in this matter see 42 U.S.C. § 1857; 40 CFR 52.2720–52.2723; 40 CFR 51.11, and 51.18.

2. 42 U.S.C. 1851c–3(a)(1).

Puerto Rico. Such clearances are outlined in Paragraph 4 of the Affidavit of the Economic Development Administrator executed on July 2, 1974. The net result of the foregoing is that any activity relative to the construction of a superport in Puerto Rico by or through the intervention of the Economic Development Administration, will be held in abeyance until the adverse circumstances hereinbefore referred to have disappeared, the need for such facility once again prevail and the circumstances arise which will make it possible to obtain the necessary financing, private sponsorship, and an adequate supply of crude oil, which will make the operation of a superport (deepwater port) economically feasible."

It is elementary that federal courts may assume jurisdiction only in cases which fall within the boundaries of a justiciable "case and controversy." See, *Texas v. Interstate Commerce Commission and Railroad Labor Board,* 258 U.S. 158, 42 S.Ct. 261, 66 L.Ed. 531 (1921); *Golden, Acting District Attorney of Kings County v. Zwickler,* 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1960); *Linda R. S. v. Richard D. et al.,* 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973); *Goosby et al. v. Osser et al.,* 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973); *Steffel v. Thompson et al.,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *O'Shea v. Littleton et al.,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). *Sosna, etc. v. State of Iowa et al.,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

In the landmark decision of *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), the Supreme Court of the United States addressed itself to the task of defining this concept and of tracing its outer limits. In so doing, the Court sets forth at page 94, 88 S.Ct. at page 1949 that:

"The jurisdiction of federal courts is defined and limited by Article III of the Constitution. In terms relevant to the question for decision in this case, the judicial power of federal courts is constitutionally restricted to "cases" and "contro-

versies." As is so often the situation in constitutional adjudication, those two words have an iceberg quality, containing beneath their surface simplicity submerged complexities which go to the very heart of our constitutional form of government. Embodied in the words "cases" and "controversies" are two complementary but somewhat different limitations. In part those words limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process. And in part those words define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government. Justiciability is the term of art employed to give expression to this dual limitation placed upon federal courts by the case-and-controversy doctrine.

Justiciability is itself a concept of uncertain meaning and scope. Its reach is illustrated by the various grounds upon which questions sought to be adjudicated in federal courts have been held not to be justiciable. Thus, no justiciable controversy is presented when the parties seek adjudication of only a political question, when the parties are asking for an advisory opinion, when the question sought to be adjudicated has been mooted by subsequent developments, and when there is no standing to maintain the action. Yet it remains true that '[j]usticiability is . . . not a legal concept with a fixed content or susceptible of scientific verification. Its utilization is the resultant of many subtle pressures . . .'" *Poe v. Ullman,* 367 U.S. 497, 508, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961.)

In the case of *Gaillot v. United States Department of Health, Education and Welfare,* 464 F.2d 598 (CA 5, 1972), cert. denied, 409 U.S. 1060, 93 S.Ct. 559, 34 L.Ed.2d 512 (1972), the Circuit Court for the 5th Circuit following the above pattern defined the concept as ". . . involv[ing] considerably more than mere abstract philosophical disagreement with the wisdom, propriety or

desirability of specific governmental activities, necessitating a judicial opinion 'advising what the law would be upon a hypothetical state of facts.'"

 Following the above rule, it is clear that a justiciable controversy must exist before this Court may be able to act or to acquire jurisdiction . . . "since the court does not render advisory opinions or decide abstract propositions." See *Church of Scientology of Hawaii v. United States,* 485 F.2d 313 (CA 9, 1973). Any indication with respect to the abstractness of any issue presented in a case could create, within the framework of Article III, an insuperable obstacle to the exercise of the Court's jurisdiction, although that jurisdiction may be technically present. See *Rescue Army v. Municipal Court,* 331 U.S. 549, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947). Even if a justiciable controversy is present at the time a complaint is filed, subsequent factual developments may turn it into a mooted controversy. See, *Nader v. Saxbe,* 162 U.S. App.D.C. 89, 497 F.2d 676 (1974). If this occurs a federal court is without power to entertain such a case. *Flast v. Cohen,* supra. A controversy can be said to be moot when ". . . it is 'abstract, feigned or hypothetical,' *when it seeks an 'advisory' opinion because it lacks the 'impact of actuality'* . . ." See, *Alton & Southern Railway Company et al. v. International Association of Machinists & Aerospace Workers,* 150 U.S.App.D.C. 36, 463 F.2d 872 (1972).

Upon a careful examination of the record in this case, it appears that the controversy presented has become moot.

The complaint was filed on May 20, 1974. Although at that time the existing factual setting was such that it could have presented a justiciable controversy, a subsequent analysis of the facts presented in Mr. Francis' sworn statement lead us to conclude that any imaginable commitment to build such a refinery does not exist at this time and will not exist in the near future. To make an adjudication of the issues presented would be tantamount to rendering an advisory opinion, something which would collide with the paramount rule found in Article III of the United States Constitution.

It can be said that Plaintiffs, by the passage of time and the admission of the Commonwealth Defendants, have achieved their purpose in filing this suit. No further valid purpose can be countenanced by the continuation of this case. This determination does not mean that in the future a proper and justiciable case and controversy might not exist.

Based on the foregoing this case is hereby dismissed without prejudice and without costs to either side.

The Clerk of the Court shall enter judgment accordingly.

IT IS SO ORDERED.