QUINN v. JALOFF. 
No. 6837.

Circuit Court of Appeals, Ninth Circuit. 
June 12, 1934.

Sidney Teiser, Wm. G. Keller, and Wm. K. Teiser (of Teiser & Keller), all of Portland, Or., for appellant.

S. J. Bischoff and Samuel B. Weinstein, both of Portland, Or., for appellee.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

MACK, Circuit Judge.

█ From a decree of the District Court confirming the allowance by the referee in bankruptcy of appellee's claim in the amount of $42,000, the trustee appeals under section 25a of the Bankruptcy Act (11 USCA § 48 (a). The trustee also appeals under section 24b of the Act (11 USCA § 47 (b) from a prior order of the District Court confirming the referee's decision to allow the claim and directing further proceedings to determine the amount of the claimant's damages. By stipulation of the parties, the issues are confined to the provability of the claim; the amount of the allowance is not challenged. Since all questions may be raised on appeal from the final order allowing the claim, the appeal from the earlier interlocutory order is superfluous. The motion to dismiss that appeal is therefore granted; the motion to dismiss the second appeal is denied. Cf., Chappell v. Brainerd, 8 F.(2d) 987 (C. C. A. 9, 1925); Triangle Electric Co. v. Foutch, 40 F.(2d) 353 (C. C. A. 8, 1930).

On April 19, 1927, appellee leased to bankrupt, a Delaware corporation, at stipulated monthly rentals, for the period from May 1, 1927, to April 30, 1937, certain premises in the city of Portland, Or. The lease provided that in case the lessee should be adjudicated a bankrupt or a permanent receiver be appointed by any court, "the Lessor may at his option immediately and without notice to the Lessee, * * * or any other person or persons, terminate this lease and immediately take possession of said premises, using such force as may be necessary. * * *" By another clause, it is provided that lessor, in case of default in payment of rent continuing for ten days, "may, at his option, immediately or at any time thereafter and without further notice or demand, enter into or upon said leased premises * * * and repossess the same as of his former estate, * * * without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant."

On March 1, 1931, lessee defaulted in payment of rent; on March 24, 1931, with consent of the lessee, a receiver was appointed for it by the federal District Court for the district of Oregon, on a stockholder's bill praying that the affairs of the corporation be wound up. Two days later, on March 26th, an involuntary petition in bankruptcy was filed against lessee and on April 20th, it was adjudicated a bankrupt. On April 8, 1931, the equity receiver, without any order of the court, abandoned the premises and the lessor at once took possession of them. The trustee in bankruptcy took no affirmative action; he neither resumed possession nor elected to adopt the lease. The premises remained vacant. Appellee filed in the bankruptcy proceedings a priority claim for the receiver's occupancy of the premises from March 24th to April 8th, in the following language:

"That in * * * the * * * lease, rental * * * agreed to be paid by the Lessee * * * was $1,125.00 per month payable in advance. That the Lessee failed * * * to pay the rent for the period of occupancy of the said * * * Receiver, and by reason thereof, there is due and owing as a preferred claim from the above entitled estate for the period of occupancy * * * by * * * Receiver, the sum of $562.50."

That claim is not now before us.

The present claim is for a debt, based on the aforestated facts alleged as a breach of contract, with damages measured by the difference between rentals reserved from May 1, 1931, to April 30, 1937, and the stipulated much smaller rental value of the premises during that period.

Appellee's contention is that under Oregon law, the appointment of the receiver or in any event, lessee's consent thereto, was an anticipatory breach of the lease which gave the lessor, two days before the filing of the petition in bankruptcy, an immediate right of action for damages based on the loss of future rentals and measured by the difference between the rental value of the premises for the balance of the term and the rent reserved in the lease. Manhattan Properties, Inc. v. Irving Trust Co. (Feb. 5, 1934), 291 U. S. 320, 54 S. Ct. 385, 78 L. Ed. ——, is sought to be distinguished on the ground that in that case no breach of the lease preceded the filing of the petition in bankruptcy. It is urged that the court held only that the lessor could not "prove in bankruptcy for loss of rents payable in the future, where the claim is founded upon the bankrupt's covenant to pay rent, and, in the alternative, upon his breach of a covenant that, in event of bankruptcy, the landlord may re-enter, and, if he does, the tenant will indemnify him against loss of rents for the remainder of the term."

While the scope of the rule established in the Manhattan Properties Case is not yet clear, it has been considered particularly in several important decisions of the Circuit Court of Appeals for the Second Circuit.

In re Outfitters' Operating Realty Co. (A. W. Perry, Inc.) v. Irving Trust Co. (C. C. A.) 69 F.(2d) 90, 91 (1934), certiorari granted May 14, 1934, 54 S. Ct. 778, 78 L.

Ed. ——, held that a landlord's claim for loss of future rents was provable in bankruptcy when based upon provisions in the lease that it would automatically terminate in case of the lessee's bankruptcy and that liquidated damages measured on some fair basis, such as the difference between the discounted rents reserved in the lease and the then rental value of the premises for the balance of the term, should be recoverable. The court said:

"It is not contingent in right, because the mere filing of a petition in bankruptcy puts an end to the lease; not at the lessor's option, but unconditionally. It is not contingent in amount, because at petition filed it is at once ascertainable whether there is a loss and what it is."

In Re F. & W. Grand 5-10-25 Cent Stores, Inc. (Possart) v. Irving Trust Co. (C. C. A.) 69 F.(2d) 807, 808 (1934), where the lease had no provision for its automatic termination, the claimant sought, but without success, to distinguish the Manhattan Properties Case because of an alleged breach of the lease prior to bankruptcy by reason of the appointment of a receiver in equity for the lessee and his repudiation of the lease before the filing of the bankruptcy petition. This contention was denied by the court on the ground that "there was no termination, nor accepted repudiation, of the lease prior to the lessee's bankruptcy." The court also expressed the opinion that neither the case of In re Mullings Clothing Co., 238 F. 58 (C. C. A. 2, 1916)—where the claim was allowed because proceedings to dissolve the corporate lessee were commenced and the lease repudiated by the receiver before the filing of the petition— nor the case of In re National Credit Clothing Co., 66 F.(2d) 371 (C. C. A. 7, 1933)— where the claim was allowed because of the disaffirmance of the lease before the filing of the petition, by the lessee's assignee for the benefit of creditors—could survive the Manhattan Properties decision. In the Possart Case, the court, overruling In re Metropoli-

tan Chain Stores, Inc., 66 F.(2d) 485 (C. C. A. 2, 1933), also denied a claim for damages for breach of the lessee's covenant to restore the premises to their original condition upon termination of the lease, on the ground that it was contingent at the time of the filing of the petition.

In several other cases the Circuit Court of Appeals for the Second Circuit has distinguished between landlord's claims which are uncertain or contingent at the time the petition in bankruptcy is filed and therefore not provable in bankruptcy, and those which are at that time certain in amount and obligation and therefore provable. Cf., In re Outfitters' Operating Realty Co. (Winston-Salem Masonic Temple) v. Irving Trust Co., 69 F.(2d) 484 (1934); Wright v. Irving Trust Co., 70 F.(2d) 245 (1934); In the Matter of F. & W. Grand 5-10-25 Cent Stores, Inc. (Marshall & Ilsley Bank) v. Irving Trust Co. (C. C. A.) 70 F.(2d) 691 (May 7, 1934).

For the purposes of this decision, we shall assume, in accordance with appellee's contention, that under Oregon law, unlike the common law, and without provisions therefor in the lease, a lessor may treat the lease as terminated in case of lessee's default and express or implied repudiation of the lease and may sue at once for damages to be measured by the difference between the rents reserved in the lease (discounted) and the then rental value of the premises for the balance of the term.[1] See H. S. & D. Inv. Co. v. McCool, 139 Or. 266, 271, 9 P.(2d) 809, 810 (1932); cf., Brown v. Hayes, 92 Wash. 300, 159 P. 89 (1916), and cases collected in note (1934) 34 Col. L. Rev. 143, note 35, but see Gardiner v. William S. Butler & Co., 245 U. S. 603, 605, 38 S. Ct. 214, 62 L. Ed. 505 (1918); Hermitage Co. v. Levine, 248 N. Y. 333, 162 N. E. 97, 59 A. L. R. 1015 (1928). We shall likewise assume that in an equity receivership in the federal District Court of Oregon, that court would apply this assumed state law, and in case of disaffirmance of such a lease by

---

[1] Appellant contends that the law of Oregon on this subject is similar to the law of California, and that an action for damages for breach of the lease can be brought only at the end of the term when damages can be measured by the difference between the rents reserved in the lease and the rentals actually received on reletting. None of the Oregon cases cited by counsel or discovered by us have passed on the specific question of the lessor's right to an immediate action for damages in case of the lessee's default and repudiation of the lease. Cf., Bowen v. Clarke, 22 Or. 566, 30 P. 430, 29 Am. St. Rep. 625 (1892); Salzgeber v. Mickel, 37 Or. 216, 60 P. 1009 (1900). For excellent general discussions of the problems involved in this case, see Radin, Claims for Unaccrued Rent in Bankruptcy (1933), 21 Calif. L. Rev. 561; 22 Calif. L. Rev. 1; Schwabacher and Weinstein, Rent Claims in Bankruptcy (1933), 33 Col. L. Rev. 213, reprinted in 7 Jour. Nat. Ass'n of Referees in Bankruptcy 110 (April, 1933); Douglas and Frank, Landlords' Claims in Reorganizations (1933) 43 Yale L. Rev. 1003.

the receiver, would allow a claim against the estate for damages. Cf., Leo v. Pearce Stores Co., 54 F.(2d) 92; Id., 57 F.(2d) 340 (D. C. E. D. Mich. 1931, 1932); Curran v. Smith-Zollinger Co., 18 Del. Ch. 220, 157 A. 432 (1931); but cf., Pacific States Corp. v. Rosenshine, 113 Cal. App. 266, 298 P. 155 (1931); Fotheringham v. Spokane Sav. Bank (Wash.) 27 P.(2d) 139, 140 (1933); see note (1934) 34 Col. L. Rev. 143. And finally, we shall assume, arguendo, that if such a right of action under state law, and/or claim against the receivership estate, had arisen definitely and not merely optionally prior to the filing of the petition in bankruptcy, the lessor might claim upon the same basis in a subsequent bankruptcy, on the analogy of the principles stated in A. W. Perry, Inc., v. Irving Trust Co., supra.

 The basis of these assumed rights is that in a lease, as in other mutually executory contracts, there is an implied covenant to remain ready, able, and willing to perform and there is a breach of this covenant and thus an anticipatory breach of the lease or contract, if one of the parties repudiates his obligations or disables himself from performance. While the implied covenant is usually stated as one not to become disabled through insolvency, or the appointment of the receiver, or the filing of a petition in bankruptcy [see Central Trust Co. v. Chicago Auditorium Ass'n, 240 U. S. 581, 591, 36 S. Ct. 412, 60 L. Ed. 811 (1916); In re Swift, 112 F. 315, 319, 320 (C. C. A. 1, 1901); In re Neff, 157 F. 57, 60, 28 L. R. A. (N. S.) 349 (C. C. A. 6, 1907)], this formulation would seem to be inaccurate in view of the right of a receiver in equity or a trustee in bankruptcy, unless there be some reservation against it, to adopt such an executory contract or lease. If insolvency, receivership, or bankruptcy, or failure to remain personally ready, able, and willing to perform created such a breach, either ipso facto or at the other party's option, there could be no adoption by receiver or trustee. It would, therefore, seem to be more accurate to define the implied covenant as one to remain ready, able, and willing to perform the obligation, or, unless it be strictly personal or nonassignable, to procure performance thereof. But however the implied covenant be formulated, it is clear that if the receiver or trustee adopts the contract, there either will have been no breach—or the breach will have been cured. See Clark, Foley and Shaw, Adoption and Rejection of Contracts and Leases by Receivers (1933) 46 Harv. L. Rev. 1111. Whether or not a cause of action has arisen will remain uncertain until the receiver shall have decided on adoption or rejection.

In the instant case, at the time of the filing of the petition in bankruptcy, the equity receiver had not as yet made his election and consequently the lessor did not then have any or at least any absolute right of action or claim for damages under the assumed state law. It was still uncertain and contingent. True it is that, thereafter, the equity receiver repudiated the lease and that for some purposes such repudiation relates back to the time of his appointment. See Pennsylvania Steel Co. v. New York City Ry. Co., 198 F. 721, 735, 744 (C. C. A. 2, 1912); Samuels v. E. F. Drew & Co., 286 F. 278 (D. C. S. D. N. Y., 1922); Id., 292 F. 734 (C. C. A. 2, 1923). But the claim, nevertheless, remains in fact contingent until the election is made, and thus in this case contingent at the time the petition in bankruptcy was filed. At that time it was also uncertain whether in case of adjudication, the trustee, under his privilege superior to that of the receiver in equity, would adopt or reject the lease, however strong the probabilities might have been that he would not adopt it.

Furthermore, it was uncertain at the time the petition in bankruptcy was filed, whether the lessor would exercise his option to act on the repudiation or would disregard it. Since he had not under his option terminated the lease and since there was no provision for its automatic termination on the lessee's bankruptcy, the lessor could have kept the lease in full force and have held his lessee personally for the rent as it fell due, despite any anticipatory breach on receivership or bankruptcy. Even on April 8th, when the receiver abandoned the premises, the lessor did not indicate an election to accept the repudiation of the lease; indeed his resumption of possession of the premises is said to have been for the purpose of preserving the property. Thus not until much later than the filing of the petition in bankruptcy, perhaps not until the filing of the present claim, did the lessor elect to give up his right to keep the lease in full force, rerenting for the lessee's account, if he so wished, and holding the lessee personally liable for future rents or deficiency in future rents, in case the receiver or the trustee in bankruptcy should not adopt the lease. It is to be noted that this receivership, instituted by a stockholder's bill praying for the winding up of the affairs of the corporation, could not have effected the dissolution or winding up of the corporation itself; it was beyond the power of a federal court in Oregon to dissolve a Delaware corporation. Cf. Maguire

v. Mortgage Co. of America, 203 F. 858 (C. C. A. 2, 1913). Thus neither the receivership itself or the repudiation by the receiver, nor the petition in bankruptcy, was sufficient to terminate the lease and to resolve the contingency as to whether the lessor would stand on his rights under the lease itself or exercise his right to damages under the assumed state law. Even if the contingency due to lessor's option might not suffice to bar a claim in bankruptcy, nevertheless, when coupled with the further contingency due to the receiver's and/or trustee's right to adopt or reject, it would seem to be clear that the claim remained at bankruptcy too contingent and uncertain to be provable in bankruptcy, whatever the rights might have been in an action at law or in the receivership proceedings, if they had not been superseded by the adjudication in bankruptcy.

The decree must be reversed with directions to disallow the claim.