### In re OWL DRUG CO.

No. 480.

District Court, D. Nevada.

Sept. 30, 1935.

Ayres, Gardiner & Pike, of Reno, Nev., and McClure & McClure, of Seattle, Wash., for claimant.

Thatcher & Woodburn, of Reno, Nev., and Clarence A. Shuey and Grant H. Wren, both of San Francisco, Cal., for trustee, George K. Edler.

YANKWICH, District Judge.

The Altill Company, a Washington corporation, presented, and the referee allowed, a total claim of $22,177, consisting of the following items:

1. Rent
 October 1, 1932, to October 9, 1932, both inclusive at $2,000.00 per month, balance unpaid .......................... $ 580.65
2. Unpaid balance of consideration for making lease .......................... 15,000.00
3. Taxes
 Last one-half 1931 taxes due November 30, 1932.............................. 5,437.57
4. Assessments ............................ $ 1,487.83
 ———————
 $22,506.05

From this total, the claimant allowed a deduction of $320.04 as interest allowed on lease deposit of $20,000 from July 1, 1932, to October 9, 1932. The adjudication of bankruptcy was made on October 10, 1932. Over the objection of the trustee, the claim was allowed in the sum of $22,177.

The claim was based upon a lease entered into with the bankrupt as lessee and the claimant as lessor on March 14, 1929. It covered certain premises in Seattle, Wash., and the building thereon known as the Silverstone Building. By it, the claimant sublet to the bankrupt the property for 92 years and 11 months, the term beginning on January 1, 1929, and ending November 20, 2021. The claimant was a lessee under a principal lease made between it as lessee and the Boston Drug Company as lessor, the terms of which the bankrupt agreed to carry out, agreeing also to pay a stipulated monthly rental.

As the determination of the principal question involved in this review depends upon a proper interpretation of the terms of the principal lease, its principal para-graphs are here set forth either in full or in a summary which follows closely that made by counsel for claimant in the briefs filed upon this review. The pertinent paragraphs are:

"Fourth: This paragraph provides that, in addition to rentals, the lessee shall pay all taxes, assessments, and the like, which may be imposed upon the premises."

"Sixteenth: This provides in effect that the lessee may assign the lease, and if assigned after January 1st, 1933, the lessee having paid the lessor the $30,000 provided for in paragraph Eighteenth, the lessee shall be relieved from any liability for future rentals or other covenants of the lease.

"Seventeenth: 'That any time after January 1st, 1933, the Lessee having paid to the Lessor the sum of Thirty Thousand ($30,000.00) Dollars as hereinafter agreed to be paid to the Lessor by the lessee, on January 1, 1933, the Lessee shall have the right upon sixty (60) days written notice to the Lessor, to surrender and terminate this lease and forfeit to the Lessor the full sum of Fifty Thousand ($50,000.00) Dollars, paid by the Lessee, as a consideration for the execution of this lease together with any interest accrued thereon, provided that if the sum of Twenty Thousand ($20,000) Dollars deposited with the Owner as a part of said sum of Fifty Thousand ($50,000.00) Dollars has been applied to the cost of a new building or returned to the Lessee on account of the erection of a new building, then the sum of Thirty Thousand ($30,000.00) Dollars paid to the Lessor together with any interest accrued thereon and the Lessee's interest in the new building shall be forfeited to the Lessor, and in the event of such a surrender and termination of this lease by the Lessee, the Lessee shall be under no further liability under any of the terms of this lease, or of the principal lease except the liability to pay any rent which has theretofore accrued and any and all other sums which have theretofore become due and payable by the Lessee, it being the intention that in such event the Lessee shall be liable for all taxes for the period up to the time of surrender and all installments of special assessments payable in the same calendar year in which surrender is made. In order to avail itself of the right to surrender this lease as herein provided, the Lessee must procure a written surrender of each and every

sublease covering any part of the premises at the time of the surrender of this lease and deliver the same together with a written surrender of this lease by the Lessee to the Lessor.'

"Eighteenth: 'That in consideration of the execution of this lease by the Lessor, the Lessee has paid to the Lessor the sum of Twenty Thousand ($20,000.00) Dollars, and the Lessee agrees that it will on January 1, 1933, pay to the Lessor the further sum of Thirty Thousand ($30,000.00) Dollars constituting a total payment of Fifty Thousand ($50,000.00) Dollars mentioned in Paragraph First hereof as a consideration for the execution of this lease, and the Lessor agrees that out of the payment of Twenty Thousand ($20,000.00) Dollars it will forthwith deposit the sum of Ten Thousand ($10,000.00) Dollars with the owner, and out of said payment it will then deposit an additional sum of Ten Thousand ($10,000.00) Dollars with the Owner, said Twenty Thousand ($20,-000.00) Dollars to constitute the Twenty Thousand ($20,000.00) Dollars to be deposited with the Owner, as provided in Paragraph Thirteen of the principal lease and to be held by the Owner, and that said deposit of Fifty Thousand ($50,-000.00) Dollars shall bear interest at the rate of six (6%) per cent. per annum payable semi-annually, the interest on the sum of Twenty Thousand ($20,000.00) Dollars to be paid by the Owner to the Lessee and the interest on the sum of Thirty Thousand ($30,000.00) Dollars to be paid by the Lessor to the Lessee, and providing there has been no breach by the Lessee of the covenants, terms or conditions of this lease remaining uncured, the principal of such deposits remaining in the hands of the Owner or the Lessor as the case may be shall be applied on the final rent falling due under the terms of this lease.

" 'It is agreed, however, that in the event the Lessee shall replace the present building upon said premises with a new building, having both a cost and reasonable value of not less than the sum of One Hundred Thousand ($100,000.00) Dollars, such additional cost of said new building shall be deemed to replace the said Twenty Thousand ($20,000.00) Dollars deposited with the Owner, and said deposit shall, upon the completion of said new building, free from incumbrances created or suffered by the Lessee, be returned to or credited to the Lessee, or used in making final payments on the cost of such new building or improvements.'

"Nineteenth: 'That if the Lessor shall forfeit this lease because of a breach of this lease by the Lessee, then the full sum of Fifty Thousand ($50,000.00) Dollars paid by the Lessee as a consideration for the execution of this lease, together with any interest accrued thereon shall be forfeited to the Lessor as liquidated damages, provided that if the sum of Twenty Thousand ($20,000.00) Dollars deposited with the Owner as a part thereof has been applied to the cost of a new building, then the sum of Thirty Thousand ($30,000.00) Dollars paid to the Lessor, together with any interest accrued thereon, together with the Lessee's interest in the new building, shall be forfeited to the Lessor as liquidated damages.' "

"Twenty-Seventh: '* * * and the Lessee covenants and agrees upon such forfeiture of this lease, or upon any termination of said demised term, to surrender and deliver up the said above described premises and property peaceably to said Lessor, or the agent or attorney of the Lessor, immediately upon the termination of said demised term and upon such forfeiture or termination said sum of Twenty Thousand ($20,000.00) Dollars deposited by the Lessee with the Lessor, and held by the Owner, together with any interest accrued thereon, shall be forfeited as liquidated damages to the Lessor, and the said sum of Thirty Thousand ($30,-000.00) Dollars deposited with the Lessor by the Lessee together with any interest accrued thereon, shall be forfeited as liquidated damages to the Lessor, provided that if the said sum of Twenty Thousand ($20,000.00) Dollars held by the Owner has been returned to the Lessee or applied to the cost of a new building, then any and all interest of the Lessee in such new building and any and all improvements erected or installed by the Lessee shall be forfeited to the Lessor as liquidated damages in lieu of the said sum of Twenty Thousand ($20,000.00) Dollars.' "

"Forty-Third: 'That it is further covenanted and agreed between the lessor and the Lessee herein that this lease shall not be assignable by operation of law, and in case of bankruptcy or insolvency of the Lessee, accompanied by the appointment of a receiver or trustee for the Lessee, this lease shall be void unless such

receiver or trustee shall pay the rent and perform the Lessee's obligations of this lease so there shall be no default thereunder, otherwise the Lessor shall have, as well as all other remedies, the full remedy of forfeiture as herein provided for in case of default or breach of the lease.'"

On April 15, 1932, the bankrupt and the claimant entered into another agreement whereby the rent of the premises was reduced $1,000 a month for 35 months beginning April 1, 1932. By this modification and in consideration of the reduction of the rent, the lessee agreed to pay the sum of $30,000 payable on January 1, 1933, in monthly installments as follows: $2,500 on the execution of the agreement on April 15, 1932; $2,500 on the first of each month commencing May 1, 1932, and ending December 1, 1932; and the final sum of $7,500 on January 1, 1933. At the time of the bankruptcy the bankrupt had paid $15,000 of the total so agreed to be paid. The unpaid amount of the remaining $15,000 it claimed and was allowed by the referee as a balance of the consideration for the execution of the lease. The allowance of this amount by the referee was based and is now defended upon the ground that it constituted a "fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not, with any interest thereon which would have been recoverable at that date or with a rebate of interest upon such as were not then payable and did not bear interest." Bankruptcy Act § 63a, cl. (1), 11 USCA § 103 (a) (1).

Whether the amount be considered a part of the original consideration for the making of the lease, as the referee found, or whether (as counsel for claimant suggests as an alternative position) it was liquidated damages, the determination depends ultimately upon the question whether the sum of $15,000 was a fixed liability owing absolutely at the time of the filing of the petition.

The determination of the question requires the statement of certain principles recognized by the decisions.

■ Courts recognize the right of persons to agree that upon the failure of any contracting party to an agreement to do certain things required of him under the agreement, he should pay to the party aggrieved by his failure a certain sum as damages. If such contracts are entered into under circumstances which indicate a difficulty of ascertaining the actual damages to be suffered in the event of such failure or breach and are reasonable in their character, they are regarded as liquidated damages and not as penalties and are given full effect.

We quote from Kothe v. R. C. Taylor Trust (1930) 280 U. S. 224, 226, 50 S. Ct. 142, 143, 74 L. Ed. 382: "The courts are 'strongly inclined to allow parties to make their own contracts, and to carry out their intentions, even when it would result in the recovery of an amount stated as liquidated damages, upon proof of the violation of the contract, and without proof of the damages actually sustained. * * * The question always is, what did the parties intend by the language used? When such intention is ascertained it is ordinarily the duty of the court to carry it out.' And see United States v. United Engineering & Construction Co., 234 U. S. [236], 241, 34 S. Ct. 843, 845, 58 L. Ed. 1294: 'Such contracts for liquidated damages, when reasonable in their character, are not to be regarded as penalties, and may be enforced between the parties.' But agreements to pay fixed sums plainly without reasonable relation to any probable damage which may follow a breach will not be enforced."

In the case just cited, the court declined to consider as a provable debt in bankruptcy a claim for $5,000 arising from a clause in a lease which provided that the filing of a petition in bankruptcy by the lessee shall be deemed to constitute a breach of the lease, and the lease shall be terminated, and that upon such termination, the lessor shall be entitled to recover his damages in the amount equal to the rent reserved in the lease for the residue of the term. This upon the ground that the amount demanded was a penalty which had no relation whatever to the probable damage. Courts, however, have given effect to clauses in leases which provided that in cases of breach and re-entry the lessee should pay to the lessor the difference between the rental value and the other payments required for the residue of the term. Wm. Filene's Sons Co. v. Weed (1918) 245 U. S. 597, 38 S. Ct. 211, 62 L. Ed. 497; Gardiner v. William S. Butler & Co. (1918) 245 U. S. 603, 38 S. Ct. 214, 62 L. Ed. 505.

■ These cases recognize the fact that ordinarily and, in the absence of any provisions for additional payments upon re-entry by the lessor following a breach by the lessee, the lessor has no further claim against the lessee. The question here involved must be determined in the light of these principles. Its determination, while not without difficulty, depends upon the application of these principles and the rulings in certain cases which we must now consider. In Re Outfitters' Operating Realty Co. (A. W. Perry, Inc., v. Irving Trust Co.) (C. C. A. 2d. Cir. 1934) 69 F.(2d) 90, 91, the court had under consideration a provision in a lease by which it was agreed that the filing of a petition in bankruptcy should be deemed to constitute a breach of the lease and that the lease should thereupon become and be terminated. The lease further provided: "and, notwithstanding any other provisions of this lease, the Lessor shall forthwith upon such termination be entitled to recover damages for such breach in an amount equal to the amount of the rent reserved in this lease for the residue of the term hereof, less the fair rental value of the premises."

Distinguishing a claim under such a clause from unliquidated claims which are not provable, the court, speaking through Learned Hand, Circuit Judge, said: "But when the parties have agreed that the lessee shall pay a sum to be ascertained by an accessible standard, the bankruptcy court is not liquidating a future loss at all; in its place the parties have substituted a promise, which does not look to the future, which is to pay the difference between two amounts presently ascertainable. The only question is whether that promise is lawful, whether it makes a contract, and as to that we have it on the highest authority that it liquidates 'the damages upon a footing familiar and fair.'"

In Re Outfitters' Operating Realty Co., Inc. (Winston-Salem Masonic Temple Co. v. Irving Trust Co.) (C. C. A. 2d. Cir. 1934) 69 F.(2d) 484, 485, the same court had under consideration a lease by the terms of which the lessor agreed to advance a sum of money for the construction of a new building which the lessee agreed to repay in annual installments equal to 2 per cent. of the total advanced, with interest on the unpaid balance. By a receipt dated subsequent to the execution of the lease, the lessee acknowledged receipt of the sum of $50,000 and agreed to repay it in twenty annual installments of $1,000 each until a definite date when the balance of the $21,000 should be deemed payable. Ruling that the undertaking to repay the money was a fixed liability provable in bankruptcy, the court, speaking through Manton, Circuit Judge, said: "In the instant case, we must read the terms of the lease and the receipt together in construing the character of the obligation assumed by the tenant. The promise to repay the advances made in both are unconditional. Sixty per cent. of the indebtedness is payable during the term and the remainder was payable at the end of thirty years. It is clear *there was no intention by the parties to measure the obligation in terms of the period of occupancy of the property.* Indeed, the tenant could anticipate the installments of the full amount and pay. Interest was payable on the installments as well as on the principal. The sums therefor were fixed and an unconditional obligation assumed. *The consideration for the promise to repay was not the use and occupancy of the land.* On the contrary, *the consideration was the advances of money,* the *receipt of which was expressly acknowledged by the tenant.* For the reasons sufficient to each of the parties, the tenant desiring to make the improvement and obtain possession of the land, and the landlord to rent his premises at the stated rent, the amount of the advances became a fixed obligation, payable by the tenant, the landlord advancing the funds necessary for the building. Whether this increased the rental or otherwise is unimportant in the present consideration. *The tenant assumed to repay the money in any event.*" (Italics added.)

In Moore v. Investment Properties Corporation (C. C. A. 9th Cir., 1934) 71 F.(2d) 711, the foregoing cases are cited with approval, but the rule therein stated is declared to be in violation of the provisions of the Civil Code of California relating to liquidated damages.

The same court has held that where additional sums other than the rent reserved are to be paid by the lessee, the payments are part of the initial consideration. In re Sun Drug Co. (Sabin v. Acme Investment Co.) (C. C. A. 9th Cir., 1925) 4 F.(2d) 843, 844.

Where, on the other hand, the deposit of certain certificates was made as a guar-

anty of faithful performance, the court held it was not a part of the consideration of the lease, notwithstanding a provision *to the contrary in it.* Seattle Rialto Theatre Co. v. Heritage (C. C. A. 9th Cir., 1925) 4 F.(2d) 668.

The circumstances under which money paid over the rent reserved will be considered a part of the consideration are stated by Rudkin, Circuit Judge, in Re Sun Drug Co., supra, in the following language: "There may be no little difficulty in reconciling all the cases on this question, because some of the courts hold that the money was advanced as security, while others hold that it was paid as a part of the consideration, under substantially similar facts. But we are confronted with no such difficulty here. The contract by its terms leaves no room for construction. It is expressly agreed that the money was paid as a consideration for the lease. *The money was not to be applied on rents to accrue in the future or for any other purpose, and was not to be returned to the lessee in any event or upon any contingency.* The payment was as absolute and as unconditional as if made for any other interest in the premises, and *the money when paid became the absolute property of the lessor, free from any claim on the part of the lessee or the trustee in bankruptcy."* (Italics added.)

The reverse of the rule, stating the circumstances under which such provisions will be considered contingent and uncertain liabilities, is stated in Manhattan Properties, Inc., v. Irving Trust Co. (1934) 291 U. S. 320, 54 S. Ct. 385, 389, 78 L. Ed. 824: "There can be no debt provable in bankruptcy arising out of a contract which becomes effective only at the claimant's option and after the inception of the proceedings, the fulfillment of which is contingent on what may happen from month to month or up to the end of the original term."

Quinn v. Jaloff (C. C. A. 9th Cir., 1934) 71 F.(2d) 707, 710, states the principle as follows:

"In the instant case, at the time of the filing of the petition in bankruptcy, *the equity receiver had not as yet made his election* and consequently the lessor did not then have any or at least any absolute right of action or claim for damages under the assumed state law. *It was still uncertain and contingent.* True it is that, thereafter, the equity receiver repudiated the lease and that for some purposes such repudiation relates back to the time of his appointment. See Pennsylvania Steel Co. v. New York City Ry. Co., 198 F. 721, 735, 744 (C. C. A. 2, 1912); Samuels v. E. F. Drew & Co., 286 F. 278 (D. C. S. D. N. Y., 1922); Id., 292 F. 734 (C. C. A. 2, 1923). *But the claim, nevertheless, remains in fact contingent until the election is made, and thus in this case contingent at the time the petition in bankruptcy was filed.* At that time it was also uncertain whether in case of adjudication, the trustee, under his privilege superior to that of the receiver in equity, *would adopt or reject the lease,* however strong the probabilities might have been that he would not adopt it.

"Furthermore, it was uncertain at the time the petition in bankruptcy was filed, whether the lessor would exercise his option to act on the repudiation or would disregard it. Since he had not under his option terminated the lease and since there was no provision for its automatic termination on the lessee's bankruptcy, the lessor could have kept the lease in full force and have held his lessee personally for the rent as it fell due, despite any anticipatory breach on receivership or bankruptcy." (Italics added.)

A well-known writer on bankruptcy has stated the following as the test by which to determine whether a claim is really contingent or simply one unliquidated by legal proceedings: "Have all the facts necessary to be proved to fasten liability already incurred? If so, the claim is not contingent. But as long as it remains uncertain whether a contract will ever give rise to an actual liability and there is no manner of removing the uncertainty by calculation, it is too contingent to be a provable debt." Gilbert's Collier on Bankruptcy (3d Ed., 1934) § 1280, p. 998.

And so we find the same court which decided the two cases in Re Outfitters' Operating Realty Co., supra, holding that where the title to a deposit depended upon future events, which made the obligation uncertain as to event or amount, it was not a claim provable in bankruptcy. And this conclusion was reached despite the fact that the deposit was denominated in the lease as a "further consideration for the making and delivery of" the lease. Wright et al. v. Irving Trust Co. (C. C. A. 2d Cir., 1934) 70 F.(2d) 245.

■ In determining the question whether a certain sum deposited or to be paid by the lessee is a fixed liability absolutely owing within the meaning of the Bankruptcy Act, another test is applied, namely, whether the lessor agreed to pay the lessee interest on the money. The payment of such interest is taken as indicative of the fact that the ownership remained in the lessee: Jensen v. Sparkes (C. C. A. 9th Cir., 1931) 53 F.(2d) 433; Moumal v. Parkhurst, 89 Or. 248, 173 P. 669. In these cases the court had under consideration clauses in leases providing that a certain amount of money deposited with the lessor should be applied upon the final month of the term, the money in the meantime drawing interest from the lessor. The ruling was that payment of interest was indicative of ownership in the lessee.

■ We may now restate briefly the conditions necessary in order to make deposits of money by a lessee under a lease fixed liabilities absolutely owing at the time of the filing of a bankruptcy petition. They are:

(1) That the deposit be made as a consideration for the execution of the lease, without a provision for its return;

(2) That if the right of the lessor to retain the money as damages be dependent upon bankruptcy, that the bankruptcy ipso facto have the effect, without any further action upon the part of the lessor, lessee, or any other person of determining the lessor's right to the fund; or

(3) That the lease indicate clearly the intention that the money be retained as damages by the lessor, according to a standard of measure reasonably related to the actual loss that may be suffered by the lessor through breach and re-entry.

■ If we analyze the clauses of the lease under consideration in the light of these principles, it is evident that we cannot consider the payment of $50,000 provided for in the original lease or in the modifying agreement, as a consideration for the making of the agreement. The mere fact that the lease so states, in one clause, is not conclusive if, from it and the modifying agreement, it is evident that the sum was not so intended.

■ Consideration in a contract or lease is a benefit to the party promising or a loss or detriment to the party to whom the promise is made. By the consideration, a person acquires and derives a profit to which he was not entitled before. Of course, this consideration need not pass immediately from one party to the other. But when it consists of money or the like, the title must at one time or another pass absolutely from one party to the other.

■ The title to the sum of $50,000 which the lessee agreed to pay under the lease under discussion *did not* pass absolutely to the lessor. The lessor acquired absolute title to it only in case of breach of the lease by the lessee or its surrender. In case the lessee fulfilled the obligations of the lease, the lessee was entitled to have the full amount applied upon the rental for the last month of the term. In the meantime, and still assuming no breach or surrender, the lessee was entitled to receive from the lessor interest upon this money. It is to be borne in mind that the payment of interest is one of the tests by which our own Circuit Court determines the question of the ownership of such funds as between lessor and lessee. Jensen v. Sparkes, supra.

We fail to see how, with so many conditions attached to the deposit, every one of which had the effect of keeping title to the fund in the lessee, it can be said that its payment was merely a consideration for the execution of the lease and of the modifying agreement. To allow the bare statement in the lease that it was a consideration to overcome the conditions which stood in the way of passing of the title thereto to the lessor would mean to allow the logic of words to outweigh the logic of realities.

■ In like manner, there are present in this case other conditions which, to our mind, militate against the contention that the act of bankruptcy, ipso facto, entitled the lessor to the money. The forty-third clause of the lease provides, it is true, that in case of bankruptcy or insolvency, the lease shall be void. Had the draftsman stopped there, there would be no question about the matter. But he did not so stop. He added a modifying clause reading: "unless such receiver or trustee shall pay the rent and perform the lessee's obligations of this lease so there shall be no default thereunder, otherwise the lessor shall have, *as well as all other remedies,* the full remedy of forfeiture as herein provided for in case of default or breach of the lease."

By this clause, the act of bankruptcy *did not* terminate the lease. The receiver or the trustee was given the option to pay the rent and perform the lessee's obligations under the lease and thereby cure his default. Only in case the receiver or trustee failed to do so, was the lessor given the remedy of forfeiture provided in the lease, *"as well as all other remedies."* We do not agree with the contention that the forfeiture of which this clause speaks merely related to the forfeiture of the money which had already been paid by the lessee under the original lease and the modifying agreement. Rather are we of the view that the word "forfeiture," as herein used, should be construed in the manner in which it is usually construed in all matters dealing with the relation of landlord and tenant. In 35 C. J. 1062 it is stated: "As used in this connection the word 'forfeiture' refers to the right of the lessor to terminate the lease because of a breach of covenant or some other wrongful act of the lessee in connection with the demised premises."

 Even if it be conceded that in case of breach other than bankruptcy, the only consequence to the lessee was the loss of the money deposited, it is evident that by the language used in the clause relating bankruptcy they intended to make certain other consequences or remedies flow from it. We need not speculate what these other remedies were. It is sufficient that the presence of these modifying clauses indicate that we are not dealing with a case where the act of bankruptcy alone, without any other act upon the part of the lessor, the lessee, or any one else, changes the right of ownership to the money. The fact that the trustee did not exercise the option *does not* affect the situation. At the time of the adjudication, a contingency—the happening of which was a condition precedent to the transfer of the ownership of the fund—had not occurred. No one knew whether it would ever occur. Assuming that a forfeiture would occur upon such failure, it had to occur before the adjudication. It did not. And its subsequent occurrence cannot have the effect of putting it back in point of time, so as to have us consider it a cause of forfeiture occurring *prior* to the adjudication. We conclude, therefore, that on October 10, 1932, the date of the adjudication, the sum of $15,000 *was not* "a fixed liability," "absolutely owing"

within the meaning of clause (1), section 63a of the Bankruptcy Act (11 USCA § 103 (a) (1). The conclusion reached disposes of the question of the correctness of the referee's allowance of the sum of $580.65. The claimant could be deprived of that amount, which was for rent for the first nine days in October, only if we held that he was entitled to the $15,000 claimed by him as damages for breach; for such a holding would necessarily imply that if the sum stipulated in the lease be taken as the measure of all damages suffered by reason of failure to pay the amounts specified in the lease, whether as rents, taxes, assessments, or charges. The taxes and assessments were rightfully allowed by the referee. The lessee had agreed to pay the taxes and assessments. They had been assessed and had become a fixed liability prior to the bankruptcy. In re Sherwoods, Inc., 210 F. 754 (C. C. A. 2d Cir. 1913); In re Spies-Alper Co. (D. C. N. J., 1916), 231 F. 535. See, also, In re Wenatchee Heights Orchard Co. (D. C. Wash., 1914) 212 F. 787.

The order of the referee is therefore modified by striking from the claim allowed the sum of $15,000. As so modified, the order of the referee stands affirmed.