**GIESY et al. v. AMERICAN NAT. BANK OF PORTLAND, OR., et al.**

District Court, D. Oregon.

Feb. 9, 1940.

John R. Latourette (of Latourette & Latourette) and Lincoln S. Ferris, both of Portland, Ore., for plaintiffs.

John C. Veatch (of Joseph, Veatch & Bradshaw), W. M. Huntington (of Huntington, Wilson & Davis), Theodore Jensen, Karl Herbring, (of Malarkey, Sabin & Herbring), Wm. P. Lord, and T. Walter Gillard, all of Portland, Or., for defendants.[1]

McCOLLOCH, District Judge.

In the State courts plaintiffs were denied recovery beyond the amount of the taxes that were delinquent at the time of the assignment. The rent for the current month had been paid, and for several months thereafter an affiliate corporation of the defunct bank continued to pay the rent. The Oregon Supreme Court denied any claim *against the assets* for further rent, holding that the established rule denying recovery of future rentals in the case of insolvent banks, when liquidated through receivership, should apply also in the case of a voluntary assignment. There was a vigorous dissenting opinion by three of the judges.

The defendants in the State court case conceded, as certain of the defendants do here, that plaintiffs could have claimed anticipatory breach of the whole lease, on account of the assignment, and could have maintained a claim for anticipatory damages against the assets; defendants' position now is that, plaintiffs having failed to make such claim at the time of the as-

signment, or within a reasonable time thereafter, the claim was waived.[2] However, the Judges joining in the majority opinion in the Oregon Supreme Court expressly declined to decide whether a breach of the whole lease could have been claimed, because of the assignment, and the dissenting opinion expressly held that the assignment did not constitute a breach of the lease, for which anticipatory damages could be claimed.

The law on this point seems to be fixed by the Supreme Court's opinion in Central Trust Co. of Illinois v. Chicago Auditorium, 240 U.S. 581, at page 590, 36 S.Ct. 412, 60 L.Ed. 811, where, by rather clear implication, the holding in the early leading case of In re Roth & Appel, 2 Cir., 181 F. 667, at page 670, 31 L.R.A.,N.S., 270, to the effect that insolvency of a lessee did not, in the absence of express contract or of a statute, breach a lease, for which anticipatory damages could be claimed, was approved.[3]

This being so, we have this situation:

(1) The rent was paid to date at the time of the assignment, and so no breach could be claimed on that account. No breach had been declared for the prior delinquency of taxes. (The parties were apparently "letting the taxes ride", as many taxpayers did during the late depression.)

(2) The assignment itself did not work a breach of the lease, for which damages could be claimed.[4] Central Trust Co. v. Chicago Auditorium, supra.

---

[1] McCamant, Thompson, King & Wood of Portland, Oregon, by W. Lair Thompson and Ralph H. King, have entered their appearance for defendants in the appeal which defendants are prosecuting to the Circuit Court of Appeals.

[2] Defendants' position that plaintiffs' only claim was for anticipatory damages, and that they waived it by claiming instead for rent, is technical, for it seems certain that, if plaintiffs had claimed anticipatory damages, such claim would have been contested by the assignee, just as the claim for rent was contested. The assignee had taken indemnity from the larger stockholders, including some of the present defendants, against all claims growing out of plaintiffs' lease.

[3] Judge Julian Mack reviewed the Oregon law in Quinn v. Jaloff, 9 Cir., 71 F. 2d 707. His conclusion in a note, 71 F.2d at page 709 of the opinion was that:

"None of the Oregon cases cited by counsel or discovered by us have passed on the specific question of the lessor's right to an immediate action for damages in case of the lessee's default and repudiation of the lease. Cf. Bowen v. Clarke, 22 Or. 566, 30 P. 430, 29 Am. St.Rep. 625 (1892); Salzgeber v. Mickel, 37 Or. 216, 60 P. 1009 (1900).

"For excellent general discussions of the problems involved in this case, see Radin, Claims for Unaccrued Rent in Bankruptcy (1933), 21 Calif.L.Rev. 561; 22 Calif.L.Rev. 1; Schwabacher and Weinstein, Rent Claims in Bankruptcy (1933), 33 Col.L.Rev. 213, reprinted in 7 Jour. Nat. Ass'n of Referees in Bankruptcy 110 (April, 1933); Douglas and Frank, Landlords' Claims in Reorganizations (1933) 43 Yale L.Rev. 1003."

[4] The default clause of the lease is as follows:

"Said Lessee further covenants and agrees to and with the said Lessors that

(3) The Oregon Supreme Court denied recovery *against the assets* for more than the accrued delinquent taxes.

(4) All the defendants contend that plaintiffs have no greater claim against the stockholders on their statutory liability than they have or would have had *against the .assets.*

Ergo, plaintiffs are remediless, under circumstances specially and peculiarly inequitable, in that all other obligations of the bank have been paid in full, and plaintiffs have been left with a "dead horse" on their hands in the shape of a· single purpose building, greatly adding to the tax burden on plaintiffs' property, and which has proved almost valueless as rental property for the more than six years since its abandonment by defendant's affiliate.

## Plaintiffs Not .Remediless under Modern Law.

■ I cannot believe that modern law leaves a badly damaged landlord so helpless. By the passage of time we know now the exact amount of plaintiffs' loss occasioned by the abandonment of the premises.[5] Plaintiffs have done equity by terminating the lease,[6] thus minimizing the very large claim that could have arisen from the unusually long unexpired term of the lease.[7]

■ I am sure that the spirit of the New Rules of Civil Procedure for District Courts, 28 U.S.C.A. following section 723c, permits me to deal with this case on the merits—that I may look through form to substance.[8]

Reduced to simple terms, what is presented is the insolvency of a former les-

---

if default shall at any time be made by said Lessee or its assigns in the payment of the rent reserved herein when due to said Lessors, as herein provided, for the space of ten (10) days after any installment or part thereof becomes due and payable as herein provided, or if default shall be made in any of the other covenants herein contained to be kept, observed and performed by the Lessee or its assigns, and such latter default shall continue twenty (20) days after notice thereof in writing shall have been given to said Lessee by said Lessors, in compliance with the giving of notices between the parties as in this Lease provided, it shall and may be lawful for the Lessors at their election, to declare the said term ended and to re-enter the said demised property or any part thereof either with or without process of law and to expel, remove and put out the said Lessee and every other person occupying, in or upon the· same, using such force as may be necessary in so doing, and to repossess and enjoy as in their first and former estate the said premises without being taken or deemed guilty in any manner of trespass, and without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenants; and in the event said Lessors do re-enter and take possession of said leased property and said buildings and improvements because of any neglect or default of said Lessee under this Lease, and after notice, said Lessors may store in any suitable place any and all personal property removed from said leased property, and such storage shall be at the sole cost and risk of the owner or owners of said personal property.

"Provided, however, in the event of default in the payment of any cash rental as in this Lease provided, no notice of such default as herein stipulated, nor demand for such cash rental, shall be required to be given to the Lessee to entitle said Lessors to terminate this Lease."

[5] I understood counsel to say that $50 per month was all plaintiffs had been able to obtain as rental following abandonment of the leased premises, whereas the lease provided for rental of $500 per month with step-ups, plus taxes and insurance. Taxes, after erection of the bank building ran about $4,000 per year. The building was erected by defendant bank's predecessor, and I understand had not been used for banking purposes for sometime prior to defendant's insolvency.

It is not strictly accurate to refer to the maker of the lease ·as "defendant bank's predecessor." The lease was made by Broadway Bank, a State banking corporation. Broadway Bank was later chartered as a national bank under the name of "Portland National Bank." At a later date Portland National Bank consolidated with The American Exchange Bank under the charter of said Portland National Bank and under the name of "The American National Bank of Portland, Oregon," present defendant. (Findings of Fact, X and XI).

[6] The lease was terminated on May 1st, 1937.

[7] By its terms, the lease ran until March 31, 1953.

[8] Cf. "To hold that there is a consti-

see,[9] abandonment of leased premises by the then lessee, within a short time after the insolvency of the prior lessee, and definite proof of the loss that has resulted to the lessor.

The statutory obligation of the stockholders was to be answerable "for all contracts, debts and engagements" of the bank. No good reason has been presented why the stockholders should be freed from the bank's contract of leasing.[10] In the service of their own interests, the stockholders caused the bank to assign its assets for the payment of all other claims, and it would be gross inequity to allow them now to claim immunity from the bank's obligation on its leasehold.

Judgment will be entered for the plaintiff for the principal amounts prayed for in the complaint, which shall be taken to include all interest that may or might be claimed by plaintiffs, and which shall be in full satisfaction of all claims now or hereafter growing out of the breach and abandonment of the lease.[11]

### Additional Memorandum on Objections to Proposed Findings.

Objection has been made to the proposed finding that the recovery allowed, $31,004, represents plaintiffs' damages, on account of the breach of the lease. Defendants' counsel say "there is no question of damages in the case", that the action is for rent which accrued after the bank's insolvency, and after the abandonment of the premises by the bank's subsidiary.

---

tutional barrier to the tax sought to be imposed would be to make a fetish of form." Mr. Justice Douglas in Pearson v. McGraw et al., 60 S.Ct. 211, 213, 84 L.Ed. ——, December 4, 1939.

[9] It is to be kept in mind that The American National Bank was no longer the lessee. The lease had been assigned three times to successive corporate affiliates of the bank. The lease was in the hands of the Union States Building Corporation at the time of the assignment of the bank's assets. The Union States Building Corporation continued to pay rent until the month of October, 1933.

The lease contained a clause against assignment without lessors' consent. The assignments had been made without obtaining the consent of the lessors, but later, and before the bank's insolvency, the assignments had been ratified by the lessors, in consideration of the bank's continuing its liability on the lease.

[10] Defendants in their argument before me seemed to contend that stockholders' liability extended only to indebtedness in the narrow sense of an obligation presently due. But see the language of Mr. Justice Douglas in Deputy v. Du Pont, 60 S.Ct. 363, 368, 84 L.Ed. ——, January 8, 1940: " * * * although an indebtedness is an obligation, an obligation is not necessarily an 'indebtedness' * * *." And see Erickson v. Grande Ronde Lumber Co. et al., 1939 Ore., 92 P.2d 170, 174, second column, where the various meanings to be given "liabilities" and "indebtedness," depending on the context, are considered.

The statute providing for double liability (12 U.S.C.A. § 64), under which the present case was brought, was recently considered in the 9th Circuit, opinion by Judge William Healy in Robbins v. Mitchell, 107 F.2d 56.

[11] Some of the authorities and articles that have been considered, in addition to the many helpful citations in the briefs, are: Northern Pacific Railway Company v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931; William Filene's Sons Company v. Weed, 245 U.S. 597, 38 S.Ct. 211, 62 L.Ed. 497; Manhattan Properties, Inc., v. Irving Trust Co., 291 U.S. 320, 54 S.Ct. 385, 78 L.Ed. 824; Irving Trust Co. v. A. W. Perry, 293 U.S. 307, 55 S.Ct. 150, 79 L.Ed. 379; City Bank Farmers Trust Co. v. Irving Trust Co., 299 U.S. 433, 57 S.Ct. 292, 81 L.Ed. 324; Kuehner v. Irving Trust Co., 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340; Schwartz v. Irving Trust Co., 299 U.S. 456, 457, 57 S.Ct. 303, 81 L.Ed. 348; Meadows v. Irving Trust Co., 299 U.S. 464, 465, 57 S.Ct. 307, 81 L.Ed. 353; "Landlords, Bankruptcy, and 77B", article by Martin A. Roeder, 23 Cornell Quarterly, 285.

And see article by Supreme Court Justice Douglas, and Jerome Frank, joint authors, "Landlords' Claims in Reorganization", 42 Yale Law Journal, May 1933, p. 1003. This is a powerful discussion by the present Supreme Court Justice and his collaborator, of "Feudal aspects of landlords' legal rights and duties," and of the "ancient rules" of property law surviving in the law of landlord and tenant. The article forecast many of the innovations introduced into the Bankruptcy Act by Section 77B, 11 U.S.C.A. § 207, enacted June 7, 1934.

See also Gerdes on Corporate Reorganizations, Vol. 2, Chap. 13.

It is true that plaintiffs' action in the State court was for accrued and unpaid rent, including taxes and insurance premiums, which, by the terms of the lease, the bank and its assignees were bound to pay. And it is true that in the present proceedings against the stockholders plaintiffs have pleaded the State court judgment. It happens that plaintiffs' damages, by the accepted rule of determining damages for breach of a lease, are in exactly the same amount as the judgment which was taken for rent, taxes and insurance.

Plaintiffs having obtained a judgment *against the defunct banking corporation* in the State court for rent (including taxes and insurance), am I, therefore, precluded in an action in this court *against the stockholders,* from determining the actual damage done to plaintiffs by breach of the lease, because the amount of the damage happens to be the same as the amount of the judgment for rent, taxes, etc. obtained in the other jurisdiction against the corporate defendant?

### Defendants Declined to Offer Evidence on Damages.

Defendants do not claim surprise. Although asked to do so by both sides, I declined to decide the case solely on the pleadings. Pre-trial was had, and as the record of the pre-trial proceedings will show, I told the parties plainly that I intended to decide the case on the merits, regardless of the theories on which other litigation, growing out of the insolvency of the bank and breach of the lease, had been conducted between other parties in the State courts—that the New Rules made it *my duty to do this.* I pointed out that the defendant stockholders were in court for the first time, and that what had gone before, short of waiver, estoppel or res adjudicata *as to the stockholders,* had no bearing on the determination here of the relief to which plaintiffs were entitled *against the stockholders* under their statutory double liability.

Following the pre-trial, and after due notice, the case was called for trial, and defendants given every opportunity to offer evidence, if they so desired, on the amount of damages done to plaintiffs through the abandonment of the lease. Defendants' counsel contended, as they had throughout, that the question of damages was not before me for consideration, despite the fact that I had taken pains to include in the pre-trial order that plaintiffs' loss, through the abandonment of the lease, was to be determined at the trial.

### Form Versus Substance.

I feel that here presented is a clash between the emphasis placed under the old practice on forms of action, as distinguished from the emphasis of the New Rules on substantive rights. Recent language by Judge Schoonmaker, in dealing with a similar situation, seems apropos. He said: "The defendant contends that this action cannot be considered as a local action for the recovery of personal property, because the plaintiff has not proceeded by the appropriate action of replevin. This position is no longer tenable under the new Rules of Civil Procedure, by which a party may sue on all claims 'either legal or equitable or both as he may have against an opposing party,' and subject to the proviso that 'the court shall grant relief * * * only in accordance with the relative substantive rights of the parties.' See Rule 18. Then, too, under Rule 64, either at the time of the commencement of, or during the course of an action, all remedies provided by state laws for the seizure of property are available. Among the remedies thus available are replevin, which may be proceeded with 'regardless of whether by state procedure the remedy is ancillary to an action or must be obtained by an independent action.' Therefore, it is of no importance at the present time to consider whether the plaintiff's remedy is by replevin, trover, money had and received, or trespass. The real question is whether, under the facts disclosed in the complaint, the plaintiff is entitled to relief. If he is, the court can apply the proper remedy, for Rule 54 (c) provides: '* * * Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.'" Commonwealth Trust Co. v. Reconstruction Finance Corporation, 28 F.Supp. 586, 588, District Court, W.D. Pennsylvania, Feb. 21, 1939. On reargument June 21, 1939.[12]

---

[12] [6] "The emphasis of the courts has been shifted from a theory of law as a cause of action, to the specified conduct of the defendant upon which the

### No Credit Allowable for Value of Building.

■ At the trial, Mr. Herbring, of counsel for defendants, stated, that in any determination of damages, credit should be given for the bank building, which the original lessee constructed on the leased premises. But the lease required such improvement to be made, and the lease expressly provided that the building should become the property of the lessors, subject to the terms of the lease.[13] I cannot conceive how in a claim for relief for breach and abandonment of the lease, defendants can claim any credit for the added value created by the improvement (cf. Commissioner of Internal Revenue v. Center Inv. Co., 9 Cir., 1939, 108 F.2d 190), if there was such added value, a matter apparently of considerable doubt.[14]

---

plaintiff tries to enforce his claim. New York Central R. R. v. Kinney, 260 U.S. 340, 43 S.Ct. 122, 67 L.Ed. 294 (1922); United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619 (1933). The new rules have adopted the words 'claim' or 'claim for relief' in place of the term 'cause of action,' which shows an attempt to avoid the concept of that term adopted by some courts prior to the rules." White v. Holland Furnace Company, Inc., D.C., 31 F.Supp. 32.

See also Munzer v. Swedish American Line et al., D.C., 30 F.Supp. 789.

13 "Building Clause

"New Building. That as further consideration moving to the Lessors for the granting of this lease, the Lessee shall, within one year from the date hereof, construct and fully complete on said premises at its own sole cost and expense, an entirely new building, two (2) or more stories in height, suitable to the neighborhood, at a cost value of not less than Thirty Thousand Dollars ($30,000.00). Said building shall be constructed of good material, erected in a good workmanlike manner, free and clear of all liens of contractors, sub-contractors, mechanics, laborers, material men, and other items of like character, and erected in full compliance with the building laws, ordinances and regulations of the City of Portland, then in force.

"Title to Building. Said building, and any and all other buildings and improvements erected or placed on said leased property by said Lessee or any one claiming under it, shall, as fast as, and to the extent that the same are so erected or placed thereon, immediately be and become a part of the realty and the property of said Lessors, subject to the terms of this Lease. And said Lessee, as tenant, shall, so long as it fully and faithfully performs and complies with all of the covenants and agreements herein contained, have full control and management of said building and improvements during the entire term of this Lease,—subject to the conditions and provisions thereof."

14 [7] I take it that the State court's construction of the Federal Banking Code, 12 U.S.C.A. § 21 et seq., which was involved in the State court's holding that the assignment of assets was good against plaintiffs' claims for future rent, is not binding on the federal courts. Compare the holding of my colleague, Judge Fee, in Bryant v. Linn County, D.C., 1938, 27 F.Supp. 562. See Deitrick, Receiver v. Greaney, Feb. 12, 1940, 60 S.Ct. 480, 84 L.Ed. —.

Conceivably, it might be held in the present case, (contrary to the holding in the State court), that the assignment of assets, in disregard of the bank's obligation under the lease, was void under 12 U.S.C.A. § 91, and then applying defendants' argument that those claims which are good against the assets are good against the stockholders, allow recovery against defendants on that ground (see Note 2 supra). But that is not the ground of this opinion.